UNITED STATES, Appellee,

v.

Timothy S. FORD, Aviation Electronics Technician Third Class (frocked), U. S. Navy, Appellant.

No. 53,528.
NMCM 85 1581.

U.S. Court of Military Appeals.

Feb. 24, 1987.

For Appellant: Lieutenant Richard K. Hodges, JAGC, USNR (argued); Lieutenant Commander Frederick N. Ottie, JAGC, USN and Lieutenant Commander James J. Quigley, JAGC, USN (on brief).

For Appellee: Captain H.C. Lassiter, USMCR (argued); Captain Carl H. Horst, JAGC, USN (on brief); Captain Wendell A. Kjos, JAGC, USN, Commander Michael P. Green, JAGC, USN, Lieutenant David O. Vollenweider, III, JAGC, USNR.

*Opinion of the Court*

SULLIVAN, Judge:

Appellant was tried by a special court-martial composed of officer and enlisted members during November 1984. Contrary to his pleas, he was found guilty of one specification alleging wrongful use of marihuana, in violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a. He was sentenced to a bad-conduct discharge, confinement for 30 days, forfeiture of $397 pay per month for 1 month, and reduction to E-1. The convening authority approved this sentence. On June 28, 1985, the Court of Military Review affirmed.

We granted review of the following issue:

> WHETHER THE RESULTS OF URINALYSIS TESTS ALONE ARE SUFFICIENT UNDER THE CIRCUMSTANCES OF THIS CASE, AS A MATTER OF LAW, TO SUSTAIN A FINDING OF GUILTY TO WRONGFUL USE OF MARIHUANA.

■ This Court has previously held that evidence of urinalysis tests, their results, and expert testimony explaining them is sufficient to show beyond a reasonable doubt that an accused used marihuana. We also have recognized that military law for over 35 years has provided that a permissive inference of wrongfulness may be drawn from such a circumstantial showing of marihuana use. *See United States v. Harper*, 22 M.J. 157, 161–62 (C.M.A.1986). Today, we must decide whether the above inference is sufficient by itself to support a finding of wrongfulness beyond a reason-

able doubt where the defense subsequently introduces evidence which purportedly undermines or contradicts this inference. *See United States v. Williams*, 21 M.J. 360, 362 (C.M.A.1986); *United States v. Biesak*, 3 U.S.C.M.A. 714, 14 C.M.R. 132 (1954). Under the circumstances of this case, we hold that it is. *See generally County Court of Ulster County v. Allen*, 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979); *Barnes v. United States*, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973).

The prosecution based its case against appellant on the results of various laboratory tests on his urine and expert testimony explaining them. It evidenced the procedures involved in taking the sample, its security and transportation to the laboratory, the procedures at the laboratory, the tests performed, and the results of those tests. It also called a chemist from the laboratory to explain the tests and interpret the results in terms of ingestion of marihuana.

Appellant took the stand and denied using marihuana during the period in question. He asserted that he did not possess or use marihuana, never ate any food that he knew contained marihuana, and had no direct knowledge of how or why his sample came up positive. He explained the test results by suggesting that the laboratory made a mistake or his estranged wife, who was aware of the urinalysis program, planted marihuana in his food. He called several witnesses who testified that they observed no abnormalities in his behavior suggesting drug abuse. He also called a family friend who testified to his wife's unhappiness with the marriage and the military, her occasional possession of marihuana, and her opportunity to plant this substance in his food.

## INFERENCE OF WRONGFULNESS

The prosecution was required to prove beyond a reasonable doubt that appellant "wrongfully" used marihuana. Art. 112a. Wrongful use in the context of Article 134,

UCMJ, 10 U.S.C. § 934, and paragraph 213g(5), Manual for Courts-Martial, United States, 1969 (Revised Edition) (Change 7), meant "the knowing use of marihuana without justification or authorization." *See United States v. Harper*, 22 M.J. at 162. The legislative history of Article 112a does not suggest the word "wrongfully" as used in this new codal provision has a different meaning. S.Rep. No. 53, 98th Cong., 1st Sess. 29 (1983). *See also* 21 U.S.C. 844; *United States v. Holloway*, 744 F. 2d 527, 532 (6th Cir.1984).

▆▆▆ In proving wrongfulness, including knowledge,[1] under Article 134 and paragraph 213g (5), Manual, *supra*, the prosecution could rely "on a permissive inference of wrongfulness which has long been recognized by military law as flowing from proof of the predicate fact of use of" the drug. *United States v. Harper, supra* at 162.[2] The President, acting pursuant to his powers under Article 36, UCMJ, 10 U.S.C. § 836, has perpetuated this method of proof for drug cases under Article 112a. *See* Part IV, para. 37(c)(5), Manual for Courts-Martial, United States, 1984.[3]

This Manual provision states:

(5) *Wrongfulness.* To be punishable under Article 112a, possession, use, distribution, introduction, or manufacture of a controlled substance must be wrongful. Possession, use, distribution, introduction, or manufacture of a controlled sub-

stance is wrongful if it is without legal justification or authorization. Possession, use, distribution, introduction, or manufacture of a controlled substance is not wrongful if such act or acts are: (A) done pursuant to legitimate law enforcement activities (for example, an informant who receives drugs as part of an undercover operation is not in wrongful possession); (B) done by authorized personnel in the performance of medical duties; or (C) without knowledge of the contraband nature of the substance (for example, a person who possesses cocaine, but actually believes it to be sugar, is not guilty of wrongful possession of cocaine). *Possession, use, distribution, introduction, or manufacture of a controlled substance may be inferred to be wrongful in the absence of evidence to the contrary. The burden of going forward with evidence with respect to any such exception in any court-martial or other proceeding under the code shall be upon the person claiming its benefit. If such an issue is raised by the evidence presented, then the burden of proof is upon the United States to establish that the use, possession, distribution, manufacture, or introduction was wrongful.*

(Emphasis added.)

It has been suggested that this Manual provision does not permit the inference of wrongfulness to be drawn at all where

---

1. Federal law expressly provides that proof of knowledge is required for conviction for possession of a controlled substance. 21 U.S.C. § 844(a). *See United States v. Holloway*, 744 F. 2d 527, 532 (6th Cir.1984). Under earlier federal narcotics statutes, knowledge or consciousness of possession was considered an element of this offense by implication. *See* Sandler, *The Statutory Presumption in Federal Narcotics Prosecutions* (hereafter Sandler), 57 J.Crim.Law, Criminology and Police Sci. 7, 13 (1966).

2. The element of knowledge in federal prosecutions for possession of narcotics may be shown by direct or circumstantial evidence. *See United States v. Pearson*, 791 F.2d 867, 871 (11th Cir.1986); *United States v. Schocket*, 753 F. 2d 336, 340 (4th Cir.1985); *United States v. Wilson*, 657 F. 2d 755, 760 (5th Cir.1981), *cert. denied*, 455 U.S. 951, 102 S.Ct. 1456, 71 L.Ed.2d 667 (1982); *United States v. Kapsalis*, 313 F. 2d 875,

878 (7th Cir.), *cert. denied*, 374 U.S. 856, 83 S.Ct. 1911, 10 L.Ed.2d 1077 (1963); *Perez v. United States*, 297 F. 2d 12, 15 (5th Cir.1961): *United States v. Adelman*, 107 F. 2d 497, 498 (2d Cir. 1939). *See generally* Sandler, *supra* at 13–14. A permissive inference in military law has long been considered no more than a well-recognized use of circumstantial evidence. *See United States v. Biesak*, 3 U.S.C.M.A. 714, 722, 14 C.M.R. 132, 140 (1954).

3. The presumption of knowledge provided in earlier federal statutes concerned a more particular knowledge, *e.g.,* that the drug possessed was imported from a foreign country or illegally imported. *See Turner v. United States*, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970); *Leary v. United States*, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969); *Yee Hem v. United States*, 268 U.S. 178, 45 S.Ct. 470, 69 L.Ed. 904 (1925). *See generally* Sandler, *supra* at 7–12.

contrary evidence is introduced by the defense.[4] In the alternative, it has been suggested that it may not be drawn unless countervailing evidence has been introduced by the prosecution to rebut the defense evidence.[5] *See generally United States v. Cuffee*, 10 M.J. 381, 382 (C.M.A. 1981); *United States v. Verdi*, 5 M.J. 330 (C.M.A.1978). We conclude that neither interpretation of this Manual provision is dictated by its language. More importantly, they are inconsistent with past practice at courts-martial with respect to its Manual predecessors and related federal practice. *See* para. 138(a)(2), 1969 Manual, *supra* [6]; Hug, *Presumptions and Inferences in Criminal Law*, 56 Mil.L.Rev. 81, 83, 92 (1972); Sandler, *The Statutory Presumption in Federal Narcotics Prosecutions*, 57 J. Crim. Law, Criminology and Police Sci. (hereafter Sandler) 7, 10–11 (1966). *See generally United States v. Biesak, supra.*

In reaching this conclusion we note that the discussion of this inference in paragraph 213a, Manual for Courts-Martial, United States, 1951, refers to it as a presumption and suggests that the presumption exists "unless the contrary appears." The original version of paragraph 213b, 1969 Manual, *supra,* expressly characterized it as an inference which may be drawn "unless the contrary appears." However, under both rules, the clear intent of the President was to create a permissive inference. More importantly, these types of inferences could still be drawn by the factfinder *if* the contrary evidence could "reasonably be disbelieved" by the factfinder. *See* para. 138a, 1951 Manual, *supra,* and para. 138a (2), 1969 Manual, *supra. See also United States v. West*, 15 U.S.C.M.A. 3, 7, 34 C.M.R. 449, 453 (1964); *United States v. Biesak*, 3 U.S.C.M.A. at 722–24, 14 C.M.R. at 140–42. The language of the present rule, "in the absence of evidence to the contrary," is not substantially different. This suggests that the inference may still be drawn where the defense evidence contrary to the inference may be reasonably disbelieved by the factfinder. *See United States v. Williams*, 21 M.J. 360. A radical departure from general past prac-

---

**4.** This argument is a variation of the "bursting bubble" theory of presumptions. *See generally United States v. Biesak*, 3 U.S.C.M.A. at 719–20, 14 C.M.R. at 137–38; *McCormick on Evidence* § 344 (E. Cleary 3d ed. 1984).

**5.** This argument is a variation of a principle of law sometimes applied in insanity and entrapment cases before federal courts. *See United States v. Bueno*, 447 F. 2d 903, 906 (5th Cir. 1971), *cert. denied*, 411 U.S. 949, 93 S.Ct. 1931, 36 L.Ed.2d 411 (1973); 2 C. Wright, *Federal Practice and Procedure:Criminal* § 403 (1982).

**6.** The following excerpt from paragraph 138(a), Manual for Courts-Martial, United States, 1969 (Revised edition), which was in effect until September 1, 1980, states:

a. Presumptions and permissible inferences. (1) *Presumptions*. The term "presumption" is applied to facts which courts are bound to assume in the absence of adequate evidence to the contrary. Examples of presumptions are—An accused person is presumed to be innocent until his guilt is proved beyond a reasonable doubt; and an accused is presumed to have been sane at the time of the offense charged, and to be sane at the time of trial, until a reasonable doubt of his sanity at the time in question is raised by the evidence. See also 148 as to the presumption of competency of witnesses.

These presumptions are procedural rules governing the production of evidence and do not themselves supply evidence.

(2) *Permissible inferences.* There are a number of permissible inferences encountered in the trial of criminal cases which are sometimes loosely referred to as "presumptions" but which actually are not presumptions at all but are merely well-recognized examples of the use of circumstantial evidence. The drawing of these inferences is not mandatory, and their weight or effect is to be measured only in terms of their logical value. The weight which should be given to any inference will depend upon all the circumstances attending the proved facts which give rise to the inference. The fact that evidence is introduced to show the nonexistence of a fact which might be inferred from proof of other facts does not, if the evidence can reasonably be disbelieved, necessarily destroy the logical value of the inference, but the rebutting evidence must be weighed against the inference. The same is true if the evidence is introduced to show the nonexistence of the facts upon which the inference is based. In drawing and weighing inferences, and in considering evidence introduced in rebuttal thereof, common sense and a general knowledge of human nature and the ordinary affairs of life should be applied.

tice is simply not supported by the drafter's analysis to this new rule. App. 21, 1984 Manual, *supra. See Barnes v. United States*, 412 U.S. at 845 n. 9, 93 S.Ct. at 2362 n. 9.

In 1969, this additional language was added by the President to paragraph 213*b:* "If an issue is raised by evidence as to whether possession or use by an accused charged with this offense was innocent on one of these grounds, a showing that it was not innocent on that ground becomes a requirement of proof." In 1982 this sentence was replaced by the following: "If such an issue is raised by the evidence presented, then the burden of proof is upon the United States to establish that the use, possession, distribution, manufacture, or introduction was wrongful." Para. 213(g)(5), 1969 Manual, *supra* (Change 7). In 1984 this wording of the provision was again promulgated by the President in Part IV, paragraph 37(c)(5), 1984 Manual, *supra. See also* 21 U.S.C. 885(a)(1).

This language did not alter prior practice with respect to the manner in which the prosecution may meet its burden of proof of wrongfulness where the defense introduces contrary evidence. *See also* R.C.M. 916(b), 1984 Manual, *supra.* Moreover, it does not expressly bar reliance on the permissive inference of wrongfulness in this context. *See* Discussion, R.C.M. 916(k)(3)(A). Instead, it simply makes clear that it remains the prosecution's burden to prove wrongfulness beyond a reasonable doubt and not the defense's burden to prove beyond a reasonable doubt that the use was innocent. *See generally Barnes v. United States, supra* at 845 n. 9, 93 S.Ct. at 2362 n. 9. In other words, the prosecution runs an additional risk of acquittal if it does not persuade the factfinder beyond a reasonable doubt that this evidence can be disbelieved. Even then, because a permissive inference is involved, the prosecution must persuade the members to draw the inference and give it sufficient weight to find the ele-

ment of wrongfulness beyond a reasonable doubt. The contrary evidence introduced by the defense must be weighed by the factfinder in deciding all these questions. *United States v. Biesak, supra* at 723–24, 14 C.M.R. at 141–42; para. 138*a*, 1951 and 1969 Manuals, *supra.*

■ In summary, whether to draw an inference of wrongfulness is a question to be decided by the factfinder using the standard of reasonable doubt. It *may* be drawn where no contrary evidence is admitted. However, if the prosecution fails to persuade the factfinder beyond a reasonable doubt that this inference should be drawn, a finding of not guilty is required. Similarly, the inference of wrongfulness *may* be drawn where contrary evidence is admitted. However, if the prosecution fails to persuade the factfinder beyond a reasonable doubt that this contrary evidence should be disbelieved or that the inference should otherwise be drawn, a finding of not guilty is required.

## APPLICATION

Turning to the present case, we note that appellant testified that he did not use marihuana during the period in question. He offered testimony from fellow soldiers that he did not exhibit any aberrant behavior indicative of the use of this drug. He finally suggested that a breakdown at the laboratory may have accounted for erroneous test results.

■ This defense evidence challenges the basis in fact upon which the inference of wrongfulness is predicated. *See* para. 138*a*, 1951 and 1969 Manuals, *supra.* It was offered by the defense to create reasonable doubt in the factfinders' minds concerning the prosecution's circumstantial proof of use.[7] A conflict in evidence concerning the existence of the predicate fact, however, does not bar use of the inference. It simply means that the members must resolve this question before they decide whether the inference should be drawn in

---

7. We recognize that failure to find use in and of itself would preclude appellant's conviction for the charged offense. *See United States v. Harper,* 22 M.J. 157, 161 (C.M.A.1986). However, our concern in this case is with its proof as the predicate fact giving rise to the presumption of wrongfulness.

the present case. *Id.* Accordingly, the inference of wrongfulness did not disappear in this case because of this defense evidence, and no insufficiency of proof of this element existed on this basis.

In addition, appellant testified that he did not knowingly use marihuana during the period in question. He suggested a possible explanation that his wife may have secretly planted the drug in his food. He finally offered testimony from a family friend that his estranged wife had the motive, opportunity, and access to the drug to do this act. The prosecution called no witnesses to rebut this defense evidence but argued to the members that such evidence was incredible or improbable and that the inference of wrongfulness should still be drawn.

■ This defense evidence challenges the existence of the fact to be inferred, wrongfulness and, more particularly, knowledge. Our case law has established that testimony by an accused that he did not knowingly use drugs and cannot honestly account for its presence in his body is sufficient to raise an issue of innocent ingestion. *United States v. Grier,* 6 U.S.C. M.A. 218, 19 C.M.R. 344 (1955). While his additional explanation concerning his wife could be considered speculative by the factfinder, *see United States v. Greenwood,* 6 U.S.C.M.A. 209, 19 C.M.R. 335 (1955), it arguably added some weight to his basic denial of knowledge. *See United States v. Hughes,* 5 U.S.C.M.A. 374, 378, 17 C.M.R. 374, 378 (1954). In any event, evidence which contradicts directly or circumstantially the inference to be drawn does not *per se* bar drawing the inference or require that the prosecution introduce evidence that appellant's wife did not secretly plant marihuana in his food.[8] Instead, the prosecution had to persuade the members beyond a reasonable doubt on credibility and

probability grounds that this evidence should be disbelieved and the inference should nonetheless be drawn and given such weight to find knowledge beyond a reasonable doubt. *See generally* 30 Am. Jur.2d, *Evidence* §§ 1081, 1083–84 (1967). Accordingly, the evidence is not insufficient on this basis.

## CONSTITUTIONAL SUFFICIENCY

The findings of guilty in this case reflect that the members rejected appellant's explanations for the presence of THC (the chemical evidence of marihuana) in his urine. In view of the evidence of record and the military judge's instructions, it is also clear that they drew an inference from this showing of use that his ingestion was wrongful. The question we must now decide is whether such an inference is alone sufficient to support beyond a reasonable doubt their finding that appellant's use of marihuana was knowing. *See Ulster County Court v. Allen,* 442 U.S. at 166–67, 99 S.Ct. at 2229–30; *United States v. Harper,* 22 M.J. at 163. We hold that a rational factfinder could find beyond a reasonable doubt, on the basis of this inference alone, that appellant knowingly used marihuana.

In assessing the sufficiency of this inference to support a finding of wrongfulness beyond a reasonable doubt, we find that the military context in which this inference is drawn is particularly important. *See Parker v. Levy,* 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974). *See generally Ulster County Court v. Allen, supra* 442 U.S. at 172, 99 S.Ct. at 2232 (Powell, J., dissenting). In other words, while we must look to what history, common sense, and experience say about the relationship between use of marihuana and knowledge, we cannot ignore the military environment in which these events allegedly occur.

---

8. The defense evidence in this case did not establish as a matter of law that appellant's use of marihuana was innocent. Instead, it required the members to infer that his wife secretly planted marihuana in his food without his knowledge. *Cf. United States v. Harris,* 9 C.M.R. 814, 818 (A.F.B.R.1953). Federal practice in entrapment cases would not require the prosecution to introduce positive countervailing evidence in these circumstances. *See United States v. Rosenfeld,* 545 F. 2d 98, 101–02 (10th Cir. 1976); *United States v. Soto,* 504 F. 2d 557, 559–60 (5th Cir.1974); *United States v. Workopich,* 479 F.2d 1142, 1146 (5th Cir.1973); *United States v. Groessel,* 440 F. 2d 602, 606–07 (5th Cir.), *cert. denied,* 403 U.S. 933, 91 S.Ct. 2263, 29 L.Ed.2d 713 (1971). *Cf. United States v. Bueno,* 447 F. 2d at 906.

As noted above, this permissive inference has existed in military law for over 35 years, and this Court, during this time period, has repeatedly recognized its persuasive force. *See United States v. Harper, supra; United States v. Crawford,* 6 U.S.C.M.A. 517, 20 C.M.R. 233 (1955); *United States v. Greenwood, supra.* It is an inference which is not "sui generis" [9] and is markedly more restricted than the federal practice upon which it was originally based or patterned. *See* Sandler, *supra. Cf. Turner v. United States,* 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970); *Leary v. United States,* 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969); Yee Hem v. United States, 268 U.S. 178, 45 S.Ct. 470, 69 L.Ed. 904 (1925). Its longstanding and consistent judicial approval reflecting accumulated common military experience strongly indicates that its application comports with due process. *See Barnes v. United States,* 412 U.S. at 844, 93 S.Ct. at 2362.

Turning to the particulars involved in drawing this inference and attributing weight to it, we note that this process is predicated on a finding of use of a controlled substance by a servicemember which is not satisfactorily explained to the factfinder. *See generally Barnes v. United States, supra* at 845, 93 S.Ct. at 2362. While the possession or use of a controlled substance such as marihuana may be legally permitted in small amounts in some civilian jurisdictions, no such amount-exception or exclusion exists in the military. *See* Art. 112a. Accordingly, to a servicemember, marihuana is contraband, *see United States v. West,* 15 U.S.C.M.A. at 6, 34 C.M.R. at 452, and his access to it, which impacts on the probability of innocent ingestion, is greatly reduced. *See Yee Hem v. United States, supra* 268 U.S. at 184, 45 S.Ct. at 471; Sandler, *supra* at 12. Furthermore, the military services in recent years have greatly intensified their efforts to eliminate drug abuse and have well publicized this campaign. *See Murray v.*

*Haldeman,* 16 M.J. 74 (C.M.A.1983). Therefore, the servicemember is on notice to avoid any and all contact with these substances, a fact which further reduces the possibility of innocent ingestion. Finally, this Court has recognized that the physiological effects from the internal presence of the drug in the body might serve to alert the user to the presence of a controlled substance in his system. *United States v. Grier,* 6 U.S.C.M.A. at 223, 19 C.M.R. at 349. Such recognized common knowledge suggests that the possibility of knowing drug use is great when a servicemember fails to satisfactorily explain the presence of the drug's constituent elements in his system. *See generally Barnes v. United States, supra* 412 U.S. at 845, 93 S.Ct. at 2362. Finally, human experience in terms of self-preservation generally dictates that a person, whether a servicemember or not, generally knows what he consumes. In view of the above, we simply cannot say that no rational factfinder could find beyond a reasonable doubt on the basis of the record in this case that appellant's use of marihuana was wrongful and knowing. *See United States v. Ford,* 4 U.S.C.M.A. 611, 16 C.M.R. 185 (C.M.A.1954). *Cf. State v. Lewis,* 394 N.W. 2d 212 (Minn.1986); *State v. Flinchpaugh,* 232 Kan. 831, 659 P.2d 208 (1983). *See generally Jackson v. Virginia,* 443 U.S. 307, 324, 99 S.Ct. 2781, 2791, 61 L.Ed.2d 560 (1979).

We again must emphasize that the factfinder is not required to reach findings of guilty on this basis. Moreover, the Government must convince or persuade the factfinder beyond a reasonable doubt to do so. Our holding today is simply that we find no constitutional violation in findings of guilty to wrongful marihuana use based on such a record.

The decision of the United States Navy-Marine Corps Court of Military Review is affirmed.

Chief Judge EVERETT and Judge COX concur.

---

9. *See Evans v. United States,* 257 F.2d 121, 128 (9th Cir.), cert. denied, 358 U.S. 866, 79 S.Ct. 98, 3 L.Ed.2d 99 (1958); *People v. Martinez,* 169 Cal.App.2d 242, 336 P.2d 988, 991 (1959); *People*

*v. Antista,* 129 Cal.App.2d 47, 276 P.2d 177, 181 (1954). *See generally* 1 *Wharton's Criminal Evidence* § 56 (C. Torcia 14th ed. 1985).