**UNITED STATES, Appellant,**

v.

**Richard J. KOSSMAN, 494 80 1067,
Private (E–1) U.S. Marine
Corps, Appellee.**

**NMCM NO. 922486 M.**

U.S. Navy–Marine Corps Court of
Military Review.

26 Jan. 1993.

LT Michael C. Pallesen, JAGC, USNR,
Appellate Defense Counsel, for Kossman.

Capt A. Diaz, USMC, Appellate Government
Counsel, for U.S.

FREYER, Senior Judge:

This is an appeal, pursuant to Article 62
of the Uniform Code of Military Justice
(UCMJ), 10 U.S.C.A. § 862, from a ruling
of the military judge dismissing some of
the charges and specifications after finding

that the accused-appellee had been confined on those charges and specifications in excess of ninety days (in addition to appropriate exclusions), and that the Government-appellant had not shown good cause for failing to bring the appellee to trial within such period. The judge also found that the appellant had relied on Rule for Courts–Martial (R.C.M.) 707 in believing that it had one hundred twenty days (in addition to exclusions provided in that Rule) in which to arraign the appellee, but he ruled that *United States v. Burton,* 21 U.S.C.M.A. 112, 44 C.M.R. 166, 1971 WL 12477 (1971), as modified by *United States v. Driver,* 23 U.S.C.M.A. 243, 49 C.M.R. 376, 1974 WL 14085 (1974), was the operative authority and required that the affected charges and specifications should be dismissed.

The appellant concedes that the requirements of *Burton* were not met, and that there were no circumstances making compliance with the requirements of *Burton* impracticable. There is no assertion of any violation of the Sixth Amendment right to a speedy trial. The basis of this appeal is that, in the appellant's view, the most recent revision of R.C.M. 707, which the parties agree was in force when the pertinent events in this case occurred, supplanted *Burton* altogether, and that, consequently, any speedy trial issues should have been decided solely with reference to that Rule. The current revision of R.C.M. 707, which was promulgated by Change V to the Manual for Courts–Martial, United States, 1984, applies to all cases in which arraignment occurs on or after 6 July 1991. The arraignment in this case took place on 29 October 1992.

■ We hold that *United States v. Burton,* as modified by *United States v. Driver,* is still operative and provides the proper rule for decision in this case. Accordingly, we affirm the ruling of the military judge.

■ The President is undoubtedly empowered by Article 36, UCMJ, to promulgate a speedy trial rule like R.C.M. 707 as a matter of criminal procedure. Such a rule may afford rights and protections greater than or supplementary to those provided by Article 10, UCMJ, may impose conditions and limitations on such *further* rights and protections, and may specify procedures and *standards,* as well as *modes* of proof, to be used in litigating issues arising under the rule, inasmuch as substantive statutory rights are not implicated. That or another rule may also provide procedures and *modes* of proof for litigating claims of Article 10 violations; but what the President may not do is to curtail substantive elements of the Article 10 statutory right, itself, either directly or by altering *standards* of proof affecting elements of the statutory claim, which are deemed substantive in nature. *See Dick v. New York Life Ins. Co.,* 359 U.S. 437, 446–47, 79 S.Ct. 921, 927, 3 L.Ed.2d 935 (1959).

*United States v. Burton,* 21 U.S.C.M.A. 112, 44 C.M.R. 166, 1971 WL 12477 (1971), holds that "a presumption of an Article 10 violation will exist when pretrial confinement exceeds three months. In such cases, this presumption will place a heavy burden on the Government to show diligence, and in the absence of such a showing the charges should be dismissed." It is necessary to consider what kind of presumption this is and whether it, and its associated *standard* of proof, are procedural or substantive.

The different types and effects of presumptions are described in detail in the Synopsis section of 1 Weinstein, *Evidence,* at 301–1–9 relating to Federal Rule of Evidence (F.R.E.) 301. Further discussion is found in the excellent opinion of Judge Brosman in *United States v. Biesak,* 3 U.S.C.M.A. 714, 14 C.M.R. 132, 1954 WL 2104 (1954). Two aspects of *Biesak* are of particular interest.

■ *First,* the *Biesak* court made clear that the only kind of factual presumption recognized in military criminal law is the same type of presumption recognized in F.R.E. 301, namely, one which does not shift the burden of proof in the sense of the risk of non-persuasion and does not constitute "evidence" of the presumed fact but merely permits the trier of fact, by drawing the particular inference, to find the presumed fact from the predicate circumstantial evidence. 14 C.M.R. at 139–

140. That type of presumption has continued down to present times. *See United States v. Ford*, 23 M.J. 331 (C.M.A.1987); *United States v. Mance*, 26 M.J. 244 (C.M.A.1988). As indicated in *Ford*, the availability of a *F.R.E. 301 permissive inference-type* presumption is a procedural matter relating to *modes* of proof and is, therefore, within the President's authority under Article 36.

 *Second*, the *Biesak* court, in holding that the presumption of sanity created only a permissive inference, declined to follow so much of the Manual for Courts-Martial as purported to characterize the presumption of sanity as one relating "to facts which courts are *bound* to presume in the absence of proof to the contrary." 14 C.M.R. at 139. Thus, the court's approach was that the *effect* of a presumption is a matter of military substantive law beyond the reach of the Manual for Courts-Martial. In this respect, its approach is entirely consistent with *Mance, Dick v. New York Life Ins. Co.*, and what is now F.R.E. 302.

With these principles in mind, it is necessary to examine the *Burton* presumption. What distinguish the *Burton* presumption from purely evidentiary or "tactical" presumptions, such as the ones discussed in *Ford* and *Mance*, are, first, that it unquestionably shifts the burden of proof, in the sense of risk of non-persuasion, from the accused to the Government upon a showing of pretrial confinement exceeding three months; second, that it defines the applicable *standard* of proof (*i.e.*, a heavy burden); and, third, that what is presumed is not a fact at all but a conclusion of law, to wit: that Article 10 has been violated.

 The first and second aspects of the *Burton* presumption clearly deal with the substantive elements of an Article 10 violation. Although the term "presumption" is used, the court, in effect, prescribed that proof of pretrial confinement exceeding three months is sufficient to make out a *prima facie* case of a violation of Article 10. That part of *Burton*, therefore, relates to the *effect* of the presumption. The rest of *Burton* defines what the Government

must show to defeat an Article 10 claim on the merits (*i.e.*, diligence), the standard of proof therefor (*i.e.*, a heavy burden), and the remedy (*i.e.*, dismissal with prejudice). Thus, notwithstanding its "presumption" phraseology, *Burton* provides the *elemental standards* of proof, not mere *modes* of proof, for a claim of an Article 10 violation and the defense thereto, as well as the nature of the remedy. In light of *Dick v. New York Life Ins. Co.*, I see no alternative but to regard all these aspects as clearly substantive implementations of Article 10 which the President is powerless to overrule via Article 36. Although Article 10, itself, prescribes no specific time limits or remedy, there is no infirmity in judicial prescription of substantive rules needed to implement the Congressional purpose of Article 10 when such specifics have not been expressly provided by the Congress. *Cf. Textile Workers Union of America v. Lincoln Mills of Alabama*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957).

Whether or not the U.S. Court of Military Appeals should now cede to the President its guardianship of Article 10 rights, and the *Burton* presumption be supplanted by a unilaterally changeable and porous R.C.M. 707, especially the latter's largely illusory remedy of dismissal without prejudice, which, in pretrial confinement cases, would generally result only in punishing successful movants by prolonging their pretrial confinement, are policy issues concerning which I express no opinion. Until the U.S. Court of Military Appeals rules on the legal issue underlying this appeal, I can only presume that its expression of confidence in "conscientious judicial enforcement of *Burton*'s 90–day rule," along with R.C.M. 707 and the Sixth Amendment, *United States v. McCallister*, 27 M.J. 138, 141 (C.M.A.1988), was meant to apply equally to itself as to lower courts. Although, because I view *Burton* as a substantive implementation of Article 10, I deem the intent of the Manual drafters to be immaterial, I agree with Judge Mollison in finding the absence of a clear intent to overrule *Burton* in the current version of R.C.M. 707, as in past versions, which I

attribute to a legitimate concern on the part of the drafters for *Burton*'s manifestly substantive Article 10 underpinnings.

MOLLISON, Judge (concurring):

A Court of Military Review is not generally free to ignore the precedent established by the United States Court of Military Appeals. *United States v. Jones*, 23 M.J. 301 (C.M.A.1987). While I believe our senior Court does not intend this Court to be bound by a case decision mindless of the impact that subsequent developments in the law may have on it (*United States v. Martindale*, 36 M.J. 870, 878–79 n. 5 (N.M.C.M.R.1993)), based on previous unsuccessful attempts by this Court to abandon the *Burton* 90–day rule (*United States v. Harvey*, 23 M.J. 280 (C.M.A.1986) (summary disposition)), the Court of Military Appeals' reiteration of the rule in *United States v. McCallister*, 27 M.J. 138, 141 (C.M.A.1988), and the lack of an express intent to overrule the *Burton* 90–day rule with the promulgation of the current R.C.M. 707 (R.C.M. 707 analysis), I am persuaded we remain bound by *Burton*. In short, if the *Burton* 90–day rule is to be abrogated, such action is the prerogative of the Court that adopted it. Accordingly, I join in the denial of the Government appeal, however, I find it unnecessary to address the other points discussed in Senior Judge Freyer's thoughtful opinion.

WELCH, Judge (dissenting):

I dissent because I believe the judge erred when he refused to follow the President's 27 June 1991 change to Rule for Courts–Martial (R.C.M.) 707. Simply stated, the logic leading me to this conclusion is as follows:

a. The President intended to abolish the previously existing "90–day rule," including the *Burton* presumption, when he promulgated the 1991 change to R.C.M. 707 (the "120–day rule").

b. The new 120–day rule is a change in procedure which the President is authorized to make pursuant to Article 36, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 836.

c. The new rule does not abridge inherent powers of the Court of Military Appeals.

d. The Court of Military Appeals has not clearly stated that we must now follow a 90–day rule and disregard the guidance of the President. Ergo, this Court does not violate precedent of the Court of Military Appeals by following the relatively new rule lawfully promulgated by the Commander-in-Chief pursuant to authority granted to him by Congress.

Because of the significance of the issue before us, my departure from the views of the majority, and the apparent need for resolution of the issue by the Court of Military Appeals, I further explain my position.

### I. The President's Intent

In my opinion, the President expressed his intention to preempt the 90–day presumption rule which started with *United States v. Burton*, 44 U.S.C.M.A. 112, 44 C.M.R. 166, 1971 WL 12477 (1971) when he promulgated the 1991 change to R.C.M. 707. The Analysis following the new rule states in part:

The period of 120 days was selected for courts-martial as a reasonable outside limit given the wide variety of locations and conditions in which courts-martial occur ... The 90–day rule previously established in R.C.M. 707(d) has been eliminated. As such the 120–day rule established in subsection (a) of this rule applies to all cases, not just cases where the accused is in pretrial confinement. Judicial decisions have held, however, that when an accused has been held in pretrial confinement for more than 90 days, a presumption arises that the accused's right to speedy trial under Article 10, U.C.M.J. has been violated. In such cases, the government must demonstrate due diligence in bringing the case to trial. *United States v. Burton*, 44 C.M.R. 166 (C.M.A.1971). Unless *Burton* and its progeny are reexamined, it would be possible to have a *Burton* violation despite compliance with this rule.

*Analysis*, R.C.M. 707, App. 21, MCM, 1984 (C 5).

At least four observations support my interpretation of the President's intention. First, I disagree with the Appellee's contention that the above quoted comment indicates an intention not to replace the *Burton* presumption. To me, the reference to judicial decisions enforcing the *Burton* rule is merely an acknowledgement by the drafters of the obvious fact that the Court of Military Appeals is usually the final arbitrator of all military speedy trial issues. Stated otherwise, the comment is a caveat advising that the drafters knew that pretrial confinement in the 91 to 120 day range could be problematic. Second, under the new rule, one remedy for a non-constitutional speedy trial violation may be a dismissal without prejudice, a result inconsistent with the mandated sanction for a *Burton* violation (i.e., dismissal *period*). Indubitably the drafters were attempting to follow procedures existing in the federal courts, rather than trying to manifest ignorance of the dismissal requirements of *Burton*. Third, the new rule replaced one containing a "90–day rule" that frequently created problems and undesirable results for the Government (e.g., *United States v. Henderson*, 1 M.J. 421 (C.M.A.1976)). Based on my experience and knowledge, I am confident that the drafters of the new rule disliked the *Burton* rule, and were intent on "fixing it." As always, we can illuminate a drafter's intention by understanding the problem the drafter was attempting to ameliorate. Fourth, the drafters must have read *United States v. Harvey*, 23 M.J. 280 (C.M.A.1986), which states in part:

> Since we have not ascertained any Presidential intent to overrule *Burton*, we need not inquire as to his power to displace a judicial decision predicated on Article 10 of the Uniform Code, 10 U.S.C. § 810.

In summary, because we know the President deleted the 90–day rule from our law, we understand the reasons he would want to change the 90–day rule, and we know that *Harvey* essentially invited the President to express any desired intent to overrule *Burton*, it is unreasonable to deny that the President's obvious intention was to kill the 90–day presumption rule.

Now, the Court of Military Appeals can surely ascertain the intent of the President—and it may need to confront the issue alluded to in *Harvey*.

## II. The President's Authority to Make Procedural Changes

Article 36, UCMJ, gives the President the authority to prescribe procedural regulations for the trial of courts-martial. The Article also states that he "shall, so far as he considers practicable, apply the principles of law ... generally recognized in the trial of criminal cases in the United States district courts ..." and that he shall report all such regulations to Congress.

During oral argument, the appellee contended that R.C.M. 707 states substantive law, contrary to the Government's contention that it states procedural law. The difference is significant because the President's rule-making authority does not extend to matters of substantive law. *See Ellis v. Jacob*, 26 M.J. 90, 92 (C.M.A.1988). To determine the status of speedy trial rules, we find guidance in *United States v. Brainer*, 691 F.2d 691 (4th Cir.1982), holding that The Speedy Trial Act of 1974 (*i.e.*, the federal speedy trial act) is constitutional, and stating at page 695:

> [T]he Speedy Trial Act lays down no "rules of decisions," but only rules of practice and procedure. Many cases have upheld the power of Congress to prescribe rules of practice and procedure for the federal courts. [Citations omitted].

R.C.M. 707 is intended to protect the accused's speedy trial rights under the 6th Amendment and Article 10, UCMJ, and to parallel the principles of The Speedy Trial Act, 18 U.S.C. § 3161 *et. seq. Analysis*, R.C.M. 707, App. 21, MCM, 1984 (C 5). In my opinion, if a speedy trial rule is a procedural rule in the federal courts, as *Brainer* has so determined, then it is a procedural rule in courts-martial, not a rule of substantive law. Such a rule may be promulgated by the President.

Support for the conclusion that R.C.M. 707 states procedural rules is also found in

*Barker v. Wingo*, 407 U.S. 514, at 523, 92 S.Ct. 2182, at 2188, 33 L.Ed.2d 101 (1972), by the Court's statement that it declined to define the constitutional right to a speedy trial in numerical terms because "such a result would require this Court to engage in legislative or rule-making in this activity, rather than in the adjudicative process to which we should confine our efforts." Likewise, *United States v. Burton*, 44 U.S.C.M.A. 112, at 118, 44 C.M.R. 166, at 172, 1971 WL 12477 (1971) acknowledges that the prospective rule of the case, adopted at the suggestion of appellate defense counsel, was issued because the legislative history of Article 10, UCMJ, indicated that the Congress had not adopted the practice of some states under which an accused is automatically discharged if not brought to trial within a specified time after being charged (i.e., the Court was engaging in rule-making, not adjudication).

The appellee's brief, in the penultimate paragraph, asks a question and makes a statement that should be addressed: "what would prevent the newly elected chief executive from lengthening the speedy trial clock to 150 days, or even more? Allowing the President such an unchecked power in effect results in the fox guarding the henhouse." In response, I invite attention to the requirement in Article 36, UCMJ, that the President submit his procedural regulations to Congress. This requirement of Article 36, UCMJ, establishes a check on the power of the President, and affords Congress the opportunity to correct any action of the President that it finds objectionable. The 1991 changes to R.C.M. 707 were submitted to Congress on 14 August 1991. Change 5, MCM 1984, 15 November 1991. (Thus far, there has been no indication from Congress that it disapproves of the new rule.) This system of checks and balances is common in the federal system. Indeed, even the U.S. Supreme Court is subject to such limitations, as noted in footnote 8 of *Brainer:*

> Generally, of course, Congress has delegated the rule-making power to the Supreme Court which in turn has delegated some rule-making authority to the district courts and courts of appeal ... But the Supreme Court is required to report proposed rules to Congress, and Congress reserves the right to veto those which it finds unsatisfactory.

In my opinion, the only difference between the issue addressed above in *Brainer* and the case at bar is that the federal Speedy Trial Act was drafted by Congress and our speedy trial rules were signed by the President. Frankly, that is a difference of no importance because the Congress has authorized the President to issue such procedural rules, and the Congress has power to change any rules issued by the President which it finds objectionable.

### III. *Inherent Powers of the Judiciary*

In *Brainer*, the Court determined that the federal Speedy Trial Act did not violate the separation of powers principle of government. Drawing upon *Nixon v. Administrator of General Services*, 433 U.S. 425, 442, 97 S.Ct. 2777, 2789, 53 L.Ed.2d 867 (1977), the Court held that the Act was within the authority of Congress. Then it stated:

> Once it is established that trial rights are a proper subject of legislation, the question becomes whether the particular provisions of the Speedy Trial Act intrude upon the zone of judicial self-administration to such a degree as to "prevent ... the (judiciary) from accomplishing its constitutionally assigned functions." We do not think that the Act's impact upon the courts can fairly be described in such extreme terms.

691 F.2d at 698.

In my opinion, the 1991 change to R.C.M. 707 does not intrude upon the zone of judicial self-administration to the degree that it prevents our judiciary (trial and appellate) from accomplishing assigned functions. Thus, I conclude that the rule does not improperly abridge inherent powers of any court in the military system, including the Court of Military Appeals.

### IV. *Precedent*

I have read *United States v. McCallister*, 27 M.J. 138 (C.M.A.1988), which cites *Harvey*, footnote 5 of *United States v. King*, 30 M.J. 59 (C.M.A.1990), comments in

Schlueter, MILITARY CRIMINAL JUSTICE PRACTICE AND PROCEDURE (3d ed. 1992), §§ 13–3–(C)(2) and (3), and Gilligan and Lederer, COURT–MARTIAL PROCEDURE (1991), § 17–57.00, and the Analysis to the new R.C.M. 707. Based on this information, I understand why the majority and the trial judge concluded that the Court of Military Appeals still considers that the 90–day rule of *Burton* has a pulse beat, and that they should not risk running afoul of that Court's holding in *United States v. Jones*, 23 M.J. 301, 302 (C.M.A. 1987) that a Court of Review is not generally free to ignore that Court's precedent.

With due respect for the Court of Military Appeals and the majority, I conclude that there is no binding precedent requiring us to conclude that *Burton* is alive. The doctrine of *stare decisis* was discussed relatively recently by the Supreme Court in *Payne v. Tennessee,* —— U.S. ——, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991):

> Adhering to precedent "is usually the wise policy, because in most matters it is more important that the applicable rule of law be settled than it be settled right." [Citation omitted]. Nevertheless, when governing decisions are unworkable or are badly reasoned, "this Court has never felt constrained to follow precedent." [Citation omitted]. *Stare decisis* is not an inexorable command; rather, it "is a principle of policy and not a mechanical formula of adherence to the latest decisions. [Citation omitted]. This is particularly true in constitutional cases, because in such cases *"correction through legislative action is practically impossible."* [Citation omitted]. Considerations in favor of *stare decisis* are at their acme in cases involving property and contract rights, where reliance interests are involved [citations omitted], *the opposite is true in cases such as the present one*

*involving procedural* and evidentiary rules. [Emphasis added].

—— U.S. at ——, 111 S.Ct. at 2610.

Applying these principles to the case before us, with due recognition of the requirement of an inferior court to normally follow the precedent of a superior court, I concluded that the President's promulgation in 1991 of the current R.C.M. 707 was the equivalent of a legislative enactment of a procedural rule (based upon power given to him by Article 36, UCMJ). Because there has been no precedential decision issued by the Court of Military Appeals since the new rule became effective, I feel obligated to follow what I consider to be a lawful regulation of the Commander-in-Chief. "[T]o continue to follow the earlier case blindly until it is formally overruled is to apply the dead, not the living, law." *Norris v. United States,* 687 F.2d 899, 904 (7th Cir.1982).[1]

I find some support for my position in other cases. *See United States v. Longhofer,* 29 M.J. 22 (C.M.A.1989), where the Court notes: (a) "The test for relieving the Government of responsibility for time is found in R.C.M. 707. This rule creates a time line, a continuum." (b) "R.C.M. 707(c) catalogs a number of unusual or extraordinary events which are excluded from government accountability. The Commander-in-Chief has so determined." 29 M.J. at 25–26 (i.e., an acknowledgment of the President's authority to establish non-constitutional speedy trial rules). *See also: United States v. Ivester,* 22 M.J. 933 (N.M.C.M.R.1986) and *United States v. Calloway,* 23 M.J. 799 (N.M.C.M.R.1986), cases squarely holding that R.C.M. 707 "preempted the field" of speedy trial law and that the trial judge erred by following *Burton,* albeit the cases were decided prior to later comments by the Court of Military Appeals indicative of a contrary conclusion).

---

1. Recently, Judge Mollison noted in *United States v. Martindale,* 36 M.J. 870 (N.M.C.M.R. 1993) that:

> A Court of Military Review is not generally free to ignore the precedent established by the Court of Military Appeals. *United States v.*

*Jones,* 23 M.J. 301, 302 (C.M.A.1987). However, we believe our senior Court does not intend us to be bound by a case decision mindless of the impact that subsequent developments in the law may have upon it.
36 M.J. at 878–79 n. 5.

In conclusion, I state the obvious: the mere existence of the present litigation indicates we have a significant problem in our military justice system that needs to be fixed (i.e., the meaning of day 91 of pretrial confinement is not crystal clear). The thick red book that is the bible of military law must provide clear guidance to all who read it, including sailors and Marines afloat and ashore around the world. We need a simple rule; we need "bright lines"; we need help quickly.