SULLIVAN, Judge
(concurring in part and in the result):
In Belfast, during the height of the “troubles” (the seemingly never-ending struggle between the Protestants and the Catholics in Northern Ireland), there was a popular saying:
Anyone who isn’t confused here really doesn’t understand what is going on.
I have sensed similar confusion in our case law concerning urinalysis test results and, perhaps, so has the Judge Advocate General of the Navy who recently certified no less *82 than seven drug cases to this court on this specific issue.[1]

The Confusion Over Campbell

This Court’s more recent case law in the area of drug testing in the military has caused this confusion. I speak primarily of the twin Campbell opinions: United States v. Campbell, 50 MJ 154 (1999) (“Campbell I”), and United States v. Campbell, 52 MJ 386 (2000) (“Campbell II). Hopefully, this confusion will end because, in the instant case, our Court now recognizes the problem. Although I still believe the Campbell decisions were wrongly decided, I join the majority’s “fresh attention” to the “applicable principles governing litigation of urinalysis cases.” 55 MJ at 80. In particular, I agree with the majority’s express limitation of the twin Campbell decisions to the question of the admission of novel scientific evidence of urinalysis proferred by the Government to show drug use. See United States v. Bush, 47 MJ 305 (1997); United States v. Young-berg, 43 MJ 379 (1995); United States v. Nimmer, 43 MJ 252 (1995). I also agree with its holding in this case that there is no mandatory foundational requirement for the admission of urinalysis evidence (old or new) that the Government show a certain nanogram count rules out innocent ingestion and that the Government must establish that a normal person would have experienced the physical and psychological effects of the drug.
Appellant’s case is but one example of the Campbell confusion. In the instant case, 54 MJ 236, the appellate court below effectively ignored the majority decision in Campbell I on the basis that a motion for reconsideration was pending and affirmed this conviction using the cases cited in my dissent in Campbell I. See Green, unpub. op. at 2; 50 MJ at 162; see also United States v. Pugh, No. 9600811 (Army Ct.Crim.App. Dec. 8, 1998) (unpub. op.). Another example is United States v. Tanner, 53 MJ 778 (A.F.Ct.Crim.App.2000), where the lower appellate court purported to follow Campbell I but still affirmed a drug conviction. There is also United States v. Barnes, 53 MJ 624 (N.M.Ct.Crim.App.2000), set aside, — MJ-(Daily Journal June 11, 2001), and the cases cited in note 1, supra, where the lower appellate court reversed drug convictions using the majority opinions of the twin Campbells.
Although it is my earnest hope that today’s decision will make clear the law pertaining to drug test results, it is important to understand the root of the Campbell confusion. In my view, the confusion started in the portion of Campbell I which required the Government to meet a three-part standard of proof for “legal sufficiency,” which included evidence
that the [drug] cutoff level and reported concentration are high enough to reasonably discount the possibility of unknowing ingestion and to indicate a reasonable likelihood that the user at some time would have “experienced the physical and psychological effects of the drug[.]”
50 MJ at 160. To this deviation from our case law, I dissented. The majority, however, refused to even acknowledge this holding was a departure from our case law. 50 MJ at 162.
Then came Campbell II. Campbell II was an opinion of our Court in response to the Government’s motion to reconsider Campbell 1. Campbell II, however, added a lack of clarity to the existing confusion by its apparent backing-off from the three-part standard of Campbell I.[2] It stated:
The petition for reconsideration raises the issue of whether the three-part standard is *83 mandatory in all drug testing cases. Given the rapid pace of technological change, we note that the three-part standard does not necessarily constitute the only means of proving knowing use. If the test results, standing alone, do not provide a rational basis for inferring knowing use, then the prosecution must produce other direct or circumstantial evidence of knowing use in order to meet it burden of proof.
52 MJ at 388 (emphasis added).
In my view, the problem of clarity in Campbell II seems rooted, in part, in the guidance noted above. To me, this guidance is unclear. When does a litigant (either the prosecution or the accused) know that in their case “the test results, standing alone, do not provide a rational basis for inferring knowing use?” Prosecutions and defenses of felony drug cases should be built on firmer and clearer guidance. Without such guidance, the law could be applied unequally (unfortunately, this may have already happened — as I shall suggest below).
As stated before, I am pleased .that the majority opinion today takes the opportunity to substantially correct the confusion previously caused by the twin Campbells. It makes clear that the twin Campbells are only applying the three-part standard (or a legally equivalent alternative) to matters concerning admissibility of novel scientific evidence.[3] Moreover, it makes clear that proof ruling out innocent ingestion or establishing that a normal user would have felt the effects of the drug is not required, even for admission of novel scientific evidence. See United States v. Bush, supra, United States v. Youngberg, supra, and United States v. Nimmer, supra.
As I mentioned above and as a final point to illustrate the impact of the Campbell-confusion issue, I wish to compare the present case of Sergeant Green with the case of Lance Corporal Warren T. Collins. United States v. Collins, No. 99-1217 (N.M.Ct.Crim. App. July 28, 2000) (unpub. op.), pet. denied, 54 MJ 430 (2001). Both are Marines. Both trials were at Marine bases in North Carolina at approximately the same time (Green was sentenced in December 1997 and Collins was sentenced in July 1998). Both were convicted of using cocaine based on urinalysis tests at the same testing site in Jacksonville, Florida. (Green lab result was 213 nano-grams per milliliter of BZE (the metabolite for cocaine) and Collins lab result was 561 nanograms per milliliter). The lab test procedure was the same for both Green and Collins (radioimmunoassay analysis (“RIA”) followed by a gas chromatography — mass spectrometry (“GCMS”) test). Both Green and Collins went AWOL (absent without leave) weeks after their drug tests. Both had their convictions reviewed by the same Court of Criminal Appeals. There, the similarities end.
Green today has his drug conviction affirmed, and forever he will have the record of a federal felony drug conviction. Collins, on the other hand, had his drug conviction reversed by the Court of Criminal Appeals and does not have a federal drug record. Two completely different results from the same Court of Criminal Appeals. Why? The answer is Campbell. As the Court of Criminal Appeals said in Collins:
The recent decision of our superior court in Campbell significantly modified the conditions under which the Government may rely upon this permissive inference [the inference of knowing use].
Although Campbell dealt with lysergic acid diethylamide and the reliability of the testing methodology employed in that case, we do not believe that Campbell can be limited to its facts____ Campbell, however, provides that the “prosecution cannot rely solely on the presence in the body of the drug or its constituent elements.” Campbell, 50 MJ at 160 (1999)....
In the appellant’s case, the Government adequately established that BZE does not naturally occur in the human body, and that the result of the urine test was reli *84 able. We find, however, that the testimony of LT Taylor [the lab expert] did not establish that the cutoff level and the appellant’s nanogram level was sufficient to discount unknowing use and to indicate that the appellant experienced the physical and psychological effects of the drug. Additionally, no other evidence presented was sufficient to permit the prosecution to rely upon the inference. See Campbell, 52 MJ at 388-89. Since the prosecution is not entitled to rely upon the presumption of knowing use in this case, and since it did not present any other direct or circumstantial evidence of knowing use, we find that the evidence is legally insufficient to prove the first element of the offense. See United States v. Barnes, 53 MJ 624 (N.M.Ct. Crim.App.2000).
Unpub. op. at 3-4 (emphasis added).
Since Collins was a drug conviction reversal which was never appealed to our Court by the Government in the certification process, Collins now stands acquitted of drug use. Yet Green has a federal felony drug conviction on his record. To me, it seems unfair that Green and Collins are treated differently under the law.

Harper, Ford, and the Twin Campbells

For almost fifteen years, our military justice system has operated on the presumption that United States v. Harper, 22 MJ 157 (CMA 1986), and United States v. Ford, 23 MJ 331 (CMA 1987), are good law. These eases recognize that urinalysis evidence may be admitted at court-martial but require its reliability to be shown to the factfinder in each case in order to legally sustain a criminal conviction. See United States v. Murphy, 23 MJ 310 (CMA 1987); cf. Skinner v. Railway Labor Executives’ Ass’n, 489 U.S. 602, 632-33, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989) (Supreme Court approval of urinalysis evidence in administrative proceedings). In my view, these decisions are still good law, and under the doctrine of stare decisis, they deserve great weight today. See United States v. Tualla, 52 MJ 228, 231 (2000).
I have been concerned that the twin Campbell decisions have raised questions concerning the meaning and correctness of those decisions, which have greatly upset the practice of military law. More importantly, Campbell I and II called into question the validity of hundreds of thousands of urinalysis tests and thousands of prosecutions based on the reported results of those tests. Today, the majority’s “fresh attention” to the Campbell decisions, both restricting and modifying their holdings with respect to the admission of “novel scientific evidence,” alleviates my concern. 55 MJ at 80. Nevertheless, I write to make clear my views in this area of the law.
First, United States v. Harper, supra, did not establish an inflexible evidentiary-suffi-ciency rule for all urinalysis cases. See United States v. Boulden, 29 MJ 44, 47 (CMA 1989). It evaluated and approved the particular evidence presented in Harper, i.e., evidence raising a permissive inference of wrongfulness recognized in military law and additional expert testimony that a particular nanogram count ruled out passive inhalation and indicated that the user at some time experienced physical and psychological effects of the drug. United States v. Harper, supra at 163. In United States v. Ford, supra at 336-37, however, this Court further addressed the legal sufficiency of proof based on the permissive inference alone, ie., without additional expert testimony on the nanogram count and its bearing on passive inhalation or the experience of physical and psychological effects of the drug. See generally United States v. Van Horn, 26 MJ 434, 437 (CMA 1988) (expert testimony relating nanogram count to the degree of certainty that drug in urine); cf. United States v. Harper, supra (expert testimony relating na-nogram count to the probability that user felt physical or psychological effects of drug).
Second, this Court approved the more limited type of proof in Ford and has done so repeatedly in subsequent cases. In United States v. Campbell, 50 MJ at 162 (Sullivan, J., dissenting), I said:
In reality, therefore, the majority makes new law in this case and, in the process, raises serious questions about military drug prosecutions based on our past cases. *85 Harper was the first word, not the last word or the only word, on the subject of sufficiency of evidence in urinalysis cases. See United States v. Bond, 46 MJ 86 (1997); United States v. Pabon, supra; United States v. Thompson, 34 MJ 287 (CMA 1992); United States v. Boulden, supra; United States v. Ford, 23 MJ 331 (CMA 1987). Moreover, the majority’s new approach to drug prosecutions goes far beyond the rules for proving drug cases now provided by the President in the Manual for Courts-Martial, United States (1998 ed.). See para. 37(c), Part IV. I must dissent.
In short, contrary to Campbell I and II, this Court has never required the Government (for evidentiary sufficiency purposes or for evidentiary admissibility purposes) to introduce evidence that a certain nanogram count discounted innocent ingestion and indicated that the accused, or a user in general, would have experienced the physical or psychological effects of the drug. See United States v. Pabon, 42 MJ 404, 406-07 (1995); cf. United States v. Hunt, 33 MJ 345, 347 (CMA 1991) (legal insufficiency found because no testing data whatsoever or expert testimony explaining it admitted). Accordingly, I applaud the majority’s ending of this confusion and its rejection of an evidentiary sufficiency approach to Campbell I and Campbell II. I also join its adoption of a more flexible approach to the admission of urinalysis evidence, even in cases involving novel scientific evidence. See United States v. Bush, supra, United States v. Youngberg, supra, and United States v. Nimmer, supra; see generally Paul Giannelli and Edward Im-winkelried, Scientific Evidence: The Fallout from Supreme Court’s Decision in Kumho Tires, 14 Criminal Justice (ABA Winter 2000).
Put simply, the Government is not required to disprove innocent ingestion or show that a particular accused in a drug case felt the physical and psychological effects of the drug he was accused of taking, or that a user in general would have felt such effects. It is unclear whether the state of the art in drug testing would permit these requirements to be met in many cases.

The Decision in This Case

For me, this case is a simple one to decide using our existing case law (minus the twin Campbells). The record shows that the drug conviction at issue in this case was supported by proper expert testimony concerning the test results on a urine sample using RIA (R. 102-03) and GCMS analysis. (R. 104) Our Court has approved the admission and legal sufficiency of such evidence in United States v. Harper, supra, and more recently in United States v. Bond, 46 MJ 86, 89 (1997). I agree with the majority today that this evidence was admissible and legally sufficient to prove beyond a reasonable doubt that appellant wrongly used cocaine. See United States v. Ford, supra. Therefore, I vote to affirm the conviction in this case.

. United States v. Barnes, United States v. Magyari, United States v. Mahoney, United States v. Shelhart, and United States v. Powe, 54 MJ 225-26 (2000); United States v. Sterne, 54 MJ 233 (2000); United States v. Ryan, 54 MJ 322 (2000). The Court of Criminal Appeals reversed drug convictions in all these cases on the basis of legal insufficiency of urinalysis evidence, citing the Campbell decisions.

. Campbell II also held that proof that "human beings as a class” experienced the physical and psychological effects of the drugs was legally sufficient (unlike Campbell I, which required proof concerning the effects experienced by the accused person who actually took the test). 52 MJ at 389. I address the propriety of this proof requirement later in this opinion.

. It is interesting to note that the phrase "admissibility of novel scientific evidence” is not to be found in either of the twin Campbell opinions, but the phrase "legal sufficiency” is. 52 MJ at 388, 50 MJ at 160-61. (See note 1, supra).