UNITED STATES, Appellee

v.

Ronald L. BREWER, Master Sergeant
U.S. Air Force, Appellant

No. 04-0567

Crim. App. No. 34936

United States Court of Appeals for the Armed Forces

Argued March 1, 2005 and May 3, 2005

Decided September 13, 2005

ERDMANN, J., delivered the opinion of the court, in which
GIERKE, C.J., and EFFRON, J., joined. CRAWFORD and BAKER, JJ.,
each filed a separate dissenting opinion.

Counsel

For Appellant: Major James M. Winner (argued); Colonel Carlos
L. McDade, Major Terry L. McElyea, and Major Sandra K.
Whittington (on brief).

For Appellee: Major Kevin P. Stiens (argued); Lieutenant
Colonel Robert V. Combs, Lieutenant Colonel Gary F. Spencer,
Major John C. Johnson, and Captain C. Taylor Smith (on brief).

Military Judge: Thomas G. Crossan Jr.


**This opinion is subject to revision before final publication.**

United States v. Brewer, No. 04-0567/AF

Judge ERDMANN delivered the opinion of the court.

Master Sergeant Ronald L. Brewer was charged with using marijuana on divers occasions over a one-year period in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a (2000). He was tried by a general court-martial composed of officer and enlisted members who found him guilty and sentenced him to confinement for eighteen months and reduction to pay grade E-2. The convening authority approved the sentence but waived mandatory forfeitures of pay for the benefit of Brewer's dependent son. The United States Air Force Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion on April 28, 2004. United States v. Brewer, No. ACM 34936, 2004 CCA Lexis 136, at *24 (A.F. Ct. Crim. App. Apr. 28, 2004).

Brewer was convicted based upon positive results for marijuana from a urinalysis test and a hair analysis test. The Government relied on the permissive inference that Brewer's use of marijuana was "wrongful" in order to meet that element of the drug charge. Brewer sought to counter that inference by presenting evidence of innocent ingestion. The military judge excluded testimony from witnesses who had frequently observed Brewer during the one-year time period. The military judge also gave the members an instruction regarding the burdens of proof

2

United States v. Brewer, No. 04-0567/AF

for the permissive inference that Brewer argues created a mandatory rebuttable presumption.

We granted review to determine whether Brewer was wrongly denied the opportunity to counter the permissive inference of wrongful use relied upon by the Government and whether the military judge's instruction regarding that permissive inference was erroneous.[1] We conclude that the errors in this case violated Brewer's rights under the Due Process Clause and were not harmless beyond a reasonable doubt. We therefore reverse

---

[1] We granted three issues:

I.

WHETHER THE GOVERNMENT IMPROPERLY SEVERED THE APPELLANT'S RELATIONSHIP WITH HIS CONFIDENTIAL DEFENSE EXPERT CONSULTANT.

II.

WHETHER THE MILITARY JUDGE ERRED BY REFUSING TO PERMIT THE APPELLANT TO PRESENT A MOSAIC OF ALIBI WITNESSES TO COUNTER THE PERMISSIVE INFERENCE UNDER ARTICLE 112a, UCMJ, CREATING AN ERROR VIOLATIVE OF THE DUE PROCESS CLAUSE.

III.

WHETHER THE MILITARY JUDGE'S INSTRUCTIONS CREATED A MANDATORY REBUTTABLE PRESUMPTION IN VIOLATION OF THE DUE PROCESS CLAUSE THAT APPELLANT'S USE OF MARIJUANA WAS WRONGFUL.

Because of our resolution of Issues II and III, we need not reach Issue I.

<u>United States v. Brewer</u>, No. 04-0567/AF

the decision of the United States Air Force Court of Criminal

Appeals.


<u>BACKGROUND</u>

The Government's case against Brewer was based upon two

positive drug test results.  The first was a urinalysis test on

a sample obtained after Brewer was randomly selected to be drug

tested.  After that sample tested positive for marijuana the

Government obtained a search authorization to test a hair sample

from Brewer and that test also returned a positive result for

marijuana use.  Based on the hair analysis, a Government expert

witness testified that Brewer "had ingested [marijuana] on

multiple occasions in the time period. . . ."  In that witness'

opinion Brewer had used marijuana at least thirty times in the

twelve months preceding the hair test.

In addition to the test results, to meet the element of the

charge that requires that use of a controlled substance be

"wrongful," the Government relied "'on a permissive inference of

wrongfulness which has long been recognized by military law as

flowing from proof of the predicate fact of use of' the drug."

<u>United States v. Ford</u>, 23 M.J. 331, 333 (C.M.A. 1987) (quoting

<u>United States v. Harper</u>, 22 M.J. 157, 162 (C.M.A. 1986)).  To

counter this inference, and in order to mount a defense of

innocent ingestion, Brewer sought to introduce the testimony of

4

five witnesses "who were with [Brewer] and observed his behavior for much of the relevant time frame and that [sic] if the accused had used marijuana they would likely have seen some evidence of it."

The Government made a motion in limine to exclude the testimony of these witnesses.  In support of its motion, the Government argued that it was introducing only urinalysis and hair analysis test results and would not be presenting evidence that Brewer used drugs at any specific time.  Because of this, the Government contended that the only evidence the defense could offer in rebuttal would be the testimony of someone who had been with Brewer for the entire one-year time period.  The Government argued that witness testimony concerning only certain, limited time frames during which that witness had been with Brewer was not relevant and/or was confusing under Military Rules of Evidence (M.R.E.) 401 and 403.

Trial defense counsel responded that presenting the testimony of witnesses who knew the accused well and who were with him for a substantial period of the charged time frame is one of the ways for the defense to respond to the generalized allegations by the Government.  Defense counsel noted that it would be impossible to find one witness who had been with Brewer for the entire time period, but stated, "What we are trying to do is build our wall of proof one brick at a time."  The defense

offered testimony from Brewer's live-in girlfriend, a close friend, his direct supervisor, and two people who worked directly with him during the workday to show that none of these people ever saw any evidence of drug use by Brewer. The defense contended that the testimony of all of these people together goes to make a "wall of proof that raises reasonable doubt."

The military judge granted the Government's motion to exclude the testimony with regard to all of the witnesses except Brewer's live-in girlfriend. At the close of the prosecution's case trial defense counsel made a motion for reconsideration of that ruling but the military judge denied the motion. Brewer's girlfriend testified that she and Brewer were strict and would not allow marijuana to be smoked in their house. She also testified that she had not seen anything to indicate that Brewer smoked marijuana. A friend of Brewer's nephew also testified, stating that he and Brewer's nephew had often smoked marijuana in the house without Brewer's knowledge and that they had once made spaghetti sauce that contained marijuana and left it on the stove.

At the close of the evidence and prior to deliberations, the military judge instructed the members concerning the permissive inference of wrongful use of drugs utilizing an instruction taken almost verbatim from the Military Judges' Benchbook. See Legal Services, Dep't of Army, Pamphlet 27-9,

United States v. Brewer, No. 04-0567/AF

Military Judges' Benchbook ch. 3, 3-37-2d (2001) [hereinafter

Benchbook].  There was no objection to this instruction at

trial.

DISCUSSION

1.  Did the Military Judge Err in Excluding the Four Defense
    Witnesses?

Brewer contends that the military judge erred in granting

the Government's motion to exclude the defense witnesses because

those witnesses were necessary to counter the permissive

inference of wrongful use upon which the Government was allowed

to rely.  The Government responds that the military judge

properly excluded the testimony of the witnesses offered by

Brewer because these witnesses were improper alibi and character

witnesses and their testimony therefore was inadmissible and was

irrelevant to the proceedings.  We review a military judge's

decision to admit or exclude evidence for abuse of discretion.

See United States v. Sullivan, 42 M.J. 360, 363 (C.A.A.F. 1995).

Brewer argues that these witnesses would have testified

that they "were with [Brewer] and observed his behavior for much

of the relevant time frame and that [sic] if the accused had

used marijuana they would likely have seen some evidence of it."

The military judge excluded the testimony because he found it

not relevant.  The lower court affirmed, noting that these

witnesses could not properly serve as alibi witnesses because

Brewer did not dispute that the drug entered his system and

7

therefore could not properly claim that he had an alibi for the offense.  The lower court further held that Brewer was improperly attempting to present testimony regarding specific instances of conduct as character evidence, when such evidence is limited to reputation or opinion testimony under M.R.E. 405(a).

We agree with the lower court that this evidence is not admissible as character evidence under M.R.E. 404 and 405.  In United States v. Schelkle, 47 M.J. 110 (C.A.A.F. 1997), the defense argued that evidence of specific instances of conduct (statements in letters by friends of the accused that they had not seen him use marijuana) should be admissible under M.R.E. 405(b) because evidence of "good military character" is an essential element of a defense to charges of drug use.  In rejecting this argument this court found that character was not an essential element of the defense in that case and that evidence of character therefore was limited to reputation and opinion evidence.  Id. at 112; see also M.R.E. 405(b).

Because character is not an essential element of any defense raised by Brewer, we reach the same result in this case. Testimony of these witnesses was not admissible under M.R.E. 405(b).  Schelkle did not, however, hold that this testimony could never be admitted and we therefore turn to the question of

whether this type of testimony may be admissible on other grounds.

It is important to note that the Government was permitted to prove an essential element of its case -- that Brewer's use of a controlled substance was wrongful -- by relying "'on a permissive inference of wrongfulness, which has long been recognized by military law as flowing from proof of the predicate fact of use of' the drug." Ford, 23 M.J. at 333 (quoting Harper, 22 M.J. at 162). To counter this inference, Brewer relied on a defense of "innocent ingestion" based in part on the fact that his nephew and his nephew's friend often smoked marijuana in his house and on one occasion put marijuana in some spaghetti sauce at the house.

In Ford, we discussed the permissive inference and its relationship to defense evidence of innocent ingestion. In that case the Government's evidence consisted of a positive urinalysis result and testimony by an expert concerning that result. The defense presented testimony from "several witnesses who testified that they observed no abnormalities in his behavior suggesting drug abuse." Id. at 332. There also was evidence that the defendant's ex-wife had access to marijuana and a motive to frame the defendant. Id. The defense argued that presenting this evidence of innocent ingestion negated the Government's ability to rely on the permissive inference to

9

prove knowing ingestion, or that in the alternative it required the Government to present additional evidence of wrongful use. Id. at 333-37.

This court disagreed with these defense contentions, noting that witness testimony that the defendant did not exhibit behavior indicative of drug use:

> challenges the basis in fact upon which the inference of wrongfulness is predicated. . . . It was offered by the defense to create a reasonable doubt in the factfinders' minds concerning the prosecution's circumstantial proof of use. A conflict in evidence concerning the existence of the predicate fact, however, does not bar use of the inference. It simply means that the members must resolve the question before they decide whether the inference should be drawn in the present case.

Id. at 335-36 (internal citations omitted).

While Ford did not specifically address the issue presented in this case, it does demonstrate that this court has recognized the potential relevance of the type of testimony offered by Brewer. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." M.R.E. 401. Testimony from people who spent substantial time with Brewer throughout the charged period that they had not seen him purposefully use drugs or observed him under the influence of drugs does go to the issue of whether he knowingly and wrongfully used drugs at least

thirty times during the charged period.  Contrary to the assertions of the dissent, we believe that if the members found this testimony credible, it would have bolstered Brewer's innocent ingestion defense.

The dissent is incorrect in arguing that only testimony of those who had observed Brewer in his home would be relevant to his defense.  Brewer did not claim the ingestion occurred at his house as the dissent states, but rather offered the possibility that his ingestion may have occurred in his home where his nephew had used the drug to explain his positive urinalysis result.  The very nature of an innocent ingestion defense means that Brewer could not prove the time or place of his innocent ingestion, but could only suggest possible explanations.  Part of a defense of innocent ingestion requires raising doubt in the minds of the members that the presence of a drug in Brewer's system came from a knowing and wrongful use of the drug.  The testimony of the witnesses offered by Brewer provides grounds for the members to question whether to draw the inference that Brewer's use of marijuana was wrongful, thereby raising a question as to an essential element of the charged offense.

We find no merit in the Government's contention that the relevance of this testimony is diminished because the Government has not alleged a specific time of use.  The Government's charge spans a one-year time frame and alleges that Brewer used

United States v. Brewer, No. 04-0567/AF

marijuana multiple times during that period. The Government does not offer specific dates or times of use because the test results upon which it relies do not provide that level of specificity. In response, Brewer offers evidence that also spans that one-year period and goes to show that he was not seen using drugs by those who saw him frequently during that time period.

Under these circumstances it is not unreasonable for the Government to charge a one-year period, but the lack of specificity should not provide a basis to prohibit Brewer from challenging the facts giving rise to the permissive inference relied upon by the Government. The use of a permissive inference of wrongful use by the Government requires that a court allow a defendant some leeway to rebut that inference by using testimony such as that proffered by Brewer in this case. The military judge, of course, retains the power to limit repetitive testimony under M.R.E. 403.

Because the military judge in this case precluded testimony from four witnesses who observed Brewer outside his home during this period, that ruling denied Brewer the opportunity to present a line of defense on the element of wrongful use and violated Brewer's due process right to present witnesses in his own defense. See Chambers v. Mississippi, 410 U.S. 284, 302 (1973) ("Few rights are more fundamental than that of an accused

to present witnesses in his own defense."). We therefore find that the military judge abused his discretion.

2.  Was the Military Judge's Instruction to the Members on the Permissive Inference of Wrongful Use Plain Error?

Brewer argues that the military judge's instruction to the members violated the Due Process Clause because it may have caused a reasonable member to believe that there was a mandatory presumption of wrongfulness, rather than a permissible inference. The Government argues that the military judge's instruction to the members was not erroneous because it was a correct statement of the law. At the close of the evidence, and prior to deliberations, the military judge instructed the members concerning the permissive inference of wrongful use as follows:

> To be punishable under Article 112a, use of a controlled substance must be wrongful. Use of a controlled substance is wrongful if it is without legal justification or authorization.

> Use of a controlled substance is not wrongful if such act or acts are: (a) done pursuant to legitimate law enforcement activities (for example, an informant who is forced to use drugs as part of an undercover operation to keep from being discovered is not guilty of wrongful use); (b) done by authorized personnel in the performance of medical duties or experiments; or (c) done without knowledge of the contraband nature of the substance (for example, a person who uses marijuana, but actually believes it to be a lawful cigarette or cigar, is not guilty of wrongful use of marijuana).

13

> Use of a controlled substance may be inferred to be wrongful in the absence of evidence to the contrary.  However, the drawing of this inference is not required.
>
> The burden of going forward with evidence with respect to any such exception in any court-martial shall be upon the person claiming its benefit.
>
> If such an issue is raised by the evidence presented, then the burden is on the United States to establish that the use was wrongful.
>
> Knowledge by the accused of the presence of the substance and knowledge of its contraband nature may be inferred from the surrounding circumstances.  However, the drawing of the inference is not required.

Following a number of other instructions, the military judge provided the following general instruction: "the burden of proof to establish the guilt of the accused beyond a reasonable doubt is on the government.  The burden never shifts to the accused to establish innocence or to disprove the facts necessary to establish each element of the offense."

As there was no objection to the permissive inference instruction at trial, we will provide relief only if we find plain error.  See United States v. Simpson, 58 M.J. 368, 378 (C.A.A.F. 2003).  To meet the test for plain error Brewer must show that there was error, the error was plain or obvious, and the error materially prejudiced his substantial rights.  United States v. Powell, 49 M.J. 460, 463-65 (C.A.A.F. 1998).  If Brewer meets this test, the burden shifts to the Government to

14

show that the error was harmless beyond a reasonable doubt. See United States v. Carter, 61 M.J. 30, 33 (C.A.A.F. 2005). The court reviews these questions de novo. Simpson, 58 M.J. at 378.

To determine whether there was error, we ask whether a reasonable member could have interpreted the instruction to create a mandatory presumption of wrongfulness in favor of the Government. See Sandstrom v. Montana, 442 U.S. 510, 514 (1979) ("That determination [of the nature of the presumption created by the instruction to the jury] requires careful attention to the words actually spoken to the jury . . . for whether a defendant has been accorded his constitutional rights depends upon the way in which a reasonable juror could have interpreted the instruction.").

The instruction begins by explaining that the drug use must be wrongful. It then identifies three situations in which use of a controlled substance is not wrongful. It next states that members may infer wrongfulness if there is no evidence that it is not wrongful, but that they are not required to do so. Then, it tells the members that the burden of going forward with evidence of any of the exceptions is on the person claiming the benefit of the exception. Finally, the instruction states that if "such an issue is raised by the evidence presented, then the burden of proof is upon the United States to establish that the use was wrongful."

15

The instruction is confusing because it does not explain the difference between "a burden of production, which only requires that an issue as to an exception be raised by the evidence, and a burden of persuasion, which would require an accused to affirmatively prove by some standard of proof that he came within the exception." United States v. Cuffee, 10 M.J. 381, 382-83 (C.M.A. 1981). Without such an explanation, a member may believe that it is the defendant's responsibility to prove that one of the exceptions applies, rather than simply to raise the issue by presenting some evidence to that effect. Further, and even more troubling, a member may believe that it is not until one of the exceptions has been proven by the defendant that the burden shifts back to the Government to show wrongful use.

The military judge's later instruction that "[t]he burden never shifts to the accused to establish innocence or to disprove the facts necessary to establish each element of the offense" does not alleviate this confusion. The permissive inference instruction clearly placed some burden on the defendant. As the "burden" in the later instruction refers to both a burden of production and a burden of persuasion, it does not clarify the nature of the burden referenced in the earlier instruction. As a result, the instructions as a whole could still confuse a reasonable member.

16

Adding to the confusion caused by the failure to explain the respective burdens on the parties is the use of the word "exception." To categorize the three circumstances that make a use not wrongful as exceptions suggests that unless one of those exceptions is found, wrongfulness should be presumed (i.e., they are exceptions to the general rule of wrongfulness). Inclusion of the word "exception" creates the possibility that a reasonable member could have interpreted the instruction to require a presumption of wrongfulness absent evidence to the contrary. Because the confusing language of the instruction might have led the members to conclude that there was a presumption that Brewer's use of marijuana was wrongful and/or that Brewer had the burden of proving that it was not, we find that the instruction was erroneous.

Next we ask whether the error was plain or obvious. The Government argues that there was no obvious error because the instruction was a correct statement of the law and was taken almost verbatim from the Benchbook. However, despite inclusion of this language in the Benchbook, the military judge was still under an obligation to evaluate the instruction and to determine its applicability to the case at hand. The Benchbook itself states that the instructions should be given "only if the subject matter of the note applies to the facts and circumstances of that case." Benchbook at ch. 1, ¶ 1-3(b).

Otherwise, notes and the accompanying instructions "are intended to explain the applicability of the instruction generally, or to alert the trial judge to optional elements or unusual applications of the instruction." Id.

Under the permissive inference instruction given in this case, it would be difficult for a lay person to grasp the subtle distinction between a permissive inference and a rebuttable presumption, or to know the difference between a burden of proof and a burden of persuasion. Because the potential for confusion of these terms is obvious in a case such as this one, the need for more carefully crafted language and for further explanation of this language is obvious as well. See United States v. Curry, 38 M.J. 77, 81 (C.M.A. 1993) ("Even if we, as lawyers, can sift through the instructions and deduce what the judge must have meant, the factfinders were not lawyers and cannot be presumed to correctly resurrect the law."). Even though the instruction was taken from the Benchbook, it was clearly erroneous under the particular circumstances of this case and therefore obvious error.[2]

---

[2] Although this issue was not reached by the Air Force court in this case, it has found on two previous occasions that giving this instruction constitutes error. See United States v. Fuller, No. ACM 35058 2004 CCA Lexis 182, at *11-*16, 2004 WL 1539559 at *4-*6.(A.F. Ct. Crim. App. June 23, 2004)(unpublished opinion); United States v. Voda, No. ACM 35337, 2004 CCA Lexis

3.   Were the Above Errors Harmless Beyond a Reasonable Doubt?

In regard to the erroneous instruction, after finding obvious error we ask whether this error materially prejudiced Brewer's substantial rights.  Powell, 49 M.J. at 463-65.  Because in this case we have a constitutional error, we must evaluate whether the Government has shown that the error was harmless beyond a reasonable doubt.  Id. at 465 n.*.  With regard to the military judge's ruling excluding defense witnesses, this court has noted that "[b]ecause an accused has the right to present witnesses under the Constitution and RCM 703(b), the Government must show that this error was harmless beyond a reasonable doubt."  United States v. Miller, 47 M.J. 352, 359-60 (C.A.A.F. 1997).  We will review both errors together to determine whether the denial of Brewer's right to due process was nonetheless harmless beyond a reasonable doubt.

Brewer argues that neither of the errors was harmless beyond a reasonable doubt because they affected his ability to properly defend himself on the element of wrongful use.  The Government contends that any error that did occur was harmless because of the extent of the evidence against Brewer.

We find that excluding the four defense witnesses made it impossible for Brewer to present his defense that those who saw him most frequently over a substantial portion of the charged

29, at *5-*10, 2004 WL 190265 at *2-*3 (A.F. Ct. Crim. App. Jan.

19

time frame had not seen him use marijuana, possess marijuana paraphernalia, or appear to be under the influence of marijuana. This line of defense was relevant to rebut the inference that his use of marijuana was wrongful. While the Government is correct that its evidence was strong to support a finding that Brewer had the marijuana in his system, it relied solely on the permissive inference of wrongful use to meet that essential element of the charge. Therefore, the exclusion of these witnesses was not harmless beyond a reasonable doubt because without their testimony that permissive inference was left unchallenged.

This prejudice was compounded by the military judge's confusing and erroneous instruction. Brewer was not permitted to challenge the inference that his use was wrongful, while at the same time reasonable members may have understood the instruction to require them to find the use wrongful if Brewer did not make a sufficient showing to the contrary. Brewer was left without recourse to rebut an essential element of the charge against him, and the Government was relieved of its burden to prove that element beyond a reasonable doubt. We find that these errors created prejudice to Brewer that is not harmless beyond a reasonable doubt.

---

26, 2004)(unpublished opinion).

United States v. Brewer, No. 04-0567/AF

## DECISION

The decision of the United States Air Force Court of Criminal Appeals is reversed.  The findings and sentence are set aside.  The record is returned to the Judge Advocate General of the Air Force.  A rehearing is authorized.

CRAWFORD, Judge (dissenting):

I respectfully dissent from the majority's analysis and disposition of both issues.  As to Issue II, the majority finds a violation of due process because Appellant was not allowed to introduce specific acts of good character to rebut a permissive inference of knowing use of marijuana, despite Appellant's own failure to take advantage of the Military Rules of Evidence and our decisions to introduce highly similar evidence under the "good soldier defense."

As to Issue III, I respectfully dissent because the majority implicitly overrules the provisions of the Manual for Courts-Martial, United States (2002 ed.) (MCM), concerning modes of proof and fails properly to consider the plain error doctrine.

## ISSUE II

### FACTS

Appellant was randomly selected to give a urine sample, which tested positive for the use of marijuana.  Based on this positive test result, the Government obtained a search authorization to seize hair samples from Appellant, which also tested positive.  The Government expert testified that Appellant "had ingested [marijuana] on multiple occasions. . . ."  In the expert's opinion, Appellant had used marijuana at least thirty

times over a twelve-month period preceding the seizing of the hair samples.

Appellant asserts that these readings were the result of passive inhalation, possibly from individuals who were, unbeknownst to him, smoking marijuana at his house and sprinkling his food with marijuana.  To support his unknowing, unwitting, passive inhalation or ingestion, the Appellant sought to call four witnesses who did not live with him to testify that they had not specifically seen Appellant using drugs.  Even though Appellant failed to take advantage of our relaxed character evidence rules, the majority holds there was a violation of due process.  United States v. Brewer, 61 M.J. __, __ (3, 12) (C.A.A.F. 2005).

DISCUSSION

The Due Process Clause "'require[s] that only the most basic procedural safeguards be observed. . . .'" Medina v. California, 505 U.S. 437, 453 (1992).  "[B]eyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation." Dowling v. United States, 493 U.S. 342, 352 (1990):

> The Bill of Rights speaks in explicit terms to many aspects of criminal procedure, and the expansion of those constitutional guarantees under the open-ended rubric of the Due Process Clause invites undue interference with both considered legislative judgments and the careful balance that the Constitution strikes between liberty and order.

Medina, 505 U.S. at 443.  Importantly, the Supreme Court in

Dowling emphasized that "[j]udges are not free, in defining 'due

process,'" to impose on law enforcement officials "[their]

'personal and private notions' of fairness. . . ."  Dowling, 493

U.S. at 353 (quoting United States v. Lovasco, 431 U.S. 783, 790

(1977)).  If the Rules of Evidence are to be ferreted out and

made by judges under the cloak of the Due Process Clause, the

law of evidence will be inaccessible to those in the field.

"Making evidence law accessible is the main reason for the code

that has become the most influential body of the American

evidence law -- the Federal Rules of Evidence."  Christopher B.

Mueller & Laird C. Kirkpatrick, Modern Evidence, Doctrine and

Practice § 1.2, at 4 (1995).  See also Hearings on the Proposed

Rules of Evidence before  Special Subcommittee on Reform of

Federal Criminal Laws of the Committee on the Judiciary, House

of Representatives, 93d Cong. 90 (1973)(testimony of Albert

Jenner Jr.)("[T]he administration of justice in the federal

courts is suffering seriously.  A major factor in this regard is

the maelstrom of rules of evidence which must be presently

ferreted out and applied by federal judges.").

The Military Rules of Evidence (M.R.E.) are "applicable in

courts-martial . . ."  M.R.E. 101.  The rules governing

admission of character evidence are set forth in M.R.E. 404,

405, and 608.  These rules have been interpreted very expansively by this Court:

> The broad availability of the good soldier defense is supported by many legal doctrines and policy arguments, but none withstand close analysis.  Cloaked in the mantle of longstanding court-martial tradition, justified by doctrines of questionable salience, and preserved by judges resistant to the Military Rules of Evidence's limitations on character evidence, the good soldier defense advances the perception that one of the privileges of high rank and long service is immunity from conviction at court-martial.  The defense privileges a certain type of accused servicemember -- a person of high rank and reputation in the military community -- at the expense of the overall fairness of the court-martial system.

Elizabeth Lutes Hillman, Note, The "Good Soldier" Defense: Character Evidence and Military Rank at Courts-Martial, 108 Yale L.J. 879, 881 (1999).  Even so, the defendant did not take advantage of these rules by introducing evidence of law-abidingness or by presenting a good soldier defense.

However broadly read and applied, none of these rules permits evidence of specific acts of good character pertinent to the character trait Appellant wished to prove.  Unable to rely on any character evidence rule, the majority relies on the "relevance" of such evidence as an independent basis for admissibility of character evidence prohibited by other rules. Setting aside for the moment that relevance alone is not a cognizable category of character evidence, a hypothetical demonstrates the fallacy of the majority's reliance on relevance

at all.  Assume a defendant is charged with vandalism of a car

on June 1, 2004, at 11:00 p.m.  Also assume, to disprove the

vandalism, he offers a witness to testify that the witness

walked down the street where the car was located at 9:00 p.m.

and did not see the defendant.  Any court would exclude that

evidence as being irrelevant unless other evidence made it

relevant.[1]  Certainly, whether he was on the block at 11:00 p.m.

on June 1 would be evidence of "consequence to the determination

of the action," but that he was not seen there at 9:00 p.m. does

not measurably reduce the likelihood that he was there at 11:00

p.m., unless some other evidence establishes that likelihood.

The majority would like to hold the opposite.  Like Federal

Rule of Evidence (Fed. R. Evid.) 405(b), M.R.E. 405(b) prohibits

the introduction of specific instances of conduct unless

"character or trait of character of a person is an essential

element of an offense or defense. . . ."  Character is an issue

in criminal cases when the defense of entrapment is raised or a

character for truthfulness is an essential element of the

defense.  In civil actions, specific instances are admissible

when there has been a negligent entrustment, defamation, or

liable actions.  None of those applies in this case.

The drafters of the rules recognized that inferences from

past behavior would be important, but excluded such proof under

---

[1] See, e.g., M.R.E. 104(b).

Fed. R. Evid. 405(a) (the model for M.R.E. 405(a)) reasoning that "[O]f the three methods of proving character provided by the rule, evidence of specific instances of conduct is the most convincing." At the same time it possesses the greatest capacity to arouse prejudice, to confuse, to surprise and to consume time." Fed. R. Evid. 405, Notes of Advisory Committee on Rules. Here, as indicated, the specific instances do not cover the relevant around-the-clock time period, nor could they.

Thus, I respectfully dissent from the further expansion of character evidence rules.

## ISSUE III

### FACTS

During the preliminary instructions before voir dire, the military judge stated, "The accused is presumed to be innocent of the offense. The Government has the burden of proving the accused's guilt by legal and competent evidence beyond a reasonable doubt." Under oath, all of the members agreed with the rule of law that the accused "is presumed to be innocent until his guilt is established by legal and competent evidence beyond a reasonable doubt." All of the members agreed to find the accused not guilty unless they were "convinced beyond a reasonable doubt . . ." of his guilt. They also agreed that the burden of proof to establish the accused's guilt rests solely upon the prosecution, that the burden never shifts to

the defense to establish the accused's innocence, and that the defense has no obligation to present any evidence or to disprove the elements of the offense. The members also recognized the distinction between "knowing ingestion of marijuana" and "using marijuana unknowingly, which is not a crime."

The military judge instructed the court members:

> Knowledge of the presence of the controlled substance is a required component of use. Knowledge of the presence of the controlled substance may be inferred from the presence of the controlled substance in the accused's body or from other circumstantial evidence. This permissive inference may be legally sufficient to satisfy the government's burden of proof as to knowledge.

> To be punishable under Article 112a, use of a controlled substance must be wrongful. Use of a controlled substance is wrongful if it is without legal justification or authorization.

> Use of a *controlled substance is not wrongful if such act or acts are: (a) done pursuant to legitimate law enforcement activities (for example, an informant* who is forced to use drugs as part of an undercover operation to keep from being discovered is not guilty of wrongful use); *(b) done by authorized personnel in the performance of medical duties* or experiments; *or (c) done without knowledge of the contraband nature of the substance (for example, a person* who uses marijuana, *but actually believes it to be* a lawful cigarette or cigar, is not guilty of wrongful use of marijuana).

> Use of a controlled substance *may be inferred to be wrongful in the absence of evidence to the contrary.* However, the drawing of this inference is not required.

> *The burden of going forward with evidence with respect to any such exception in a court-martial shall be upon the person claiming its benefit.*

7

> *If such an issue is raised by the evidence presented, then the burden of proof is upon the United States to establish that the use was wrongful.*
>
> Knowledge by the accused of the presence of the substance and knowledge of its contraband nature may be inferred from the surrounding circumstances. However, the drawing of any inference is not required.

Emphasis added.

Later, he instructed the members:

> You are further advised, first, that the accused is presumed to be innocent until his guilt is established by legal and competent evidence beyond a reasonable doubt; . . . the burden of proof to establish the guilt of the accused beyond a reasonable doubt is on the government. The burden never shifts to the accused to establish innocence or to disprove the facts necessary to establish each element of the offense.

There was no objection to these instructions. The italicized portions of the military judge's instructions were taken verbatim from the Manual for Courts-Martial United States (2000 ed.) (MCM), pt. IV, ¶ 37c(5). The instruction from the Military Judges' Benchbook is as follows:

> To be punishable under Article 112a, use of a controlled substance must be wrongful. Use of a controlled substance is wrongful if it is without legal justification or authorization. (Use of a controlled substance is not wrongful if such act or acts are: (a) done pursuant to legitimate law enforcement activities (for example, an informant who is forced to use drugs as part of an undercover operation to keep from being discovered is not guilty of wrongful use); or (b) done by authorized personnel in the performance of medical duties or experiments.)

> Knowledge by the accused of the presence of the substance and knowledge of its contraband nature may be inferred from the surrounding circumstances (including but not limited to _____). (You may infer from the presence of (_____) in the accused's urine that the accused knew (he)(she) used (_____).)  However, the drawing of any inference is not required.
>
> Use of a controlled substance may be inferred to be wrongful in the absence of evidence to the contrary. However, the drawing of this inference is not required.

Legal Services, Dep't. of Army Pamphlet 27-9, Military Judges' Benchbook, ch. 3, para. 3-37-2d (2001).

Defense Argument.  Appellant argues it was error to instruct the members using the portion of the instruction highlighted above, because it created a "mandatory rebuttable presumption" that the Appellant's use of marijuana was wrongful. He contends that "[a] reasonable court member could have interpreted the instruction as relieving the government of its burden of persuasion on the wrongfulness element and shifting that burden entirely to the appellant."  Thus a court member could have understood that "the government had no burden of any kind on the element of wrongfulness. . . ."

Government Argument.  The Government argues the military judge's instruction did not explicitly create a mandatory rebuttable presumption, because it did not direct the members to presume the use of marijuana was wrongful.  To the contrary, the

instruction properly allowed the members to infer the use was wrongful, but noted that the inference was not required.

## DISCUSSION

There was no error.  The prosecution is entitled to rely "'on a permissive inference of wrongfulness, which has long been recognized by military law as flowing from proof of the predicate fact of use of' the drug."  United States v. Ford, 23 M.J. 331, 333 (C.M.A. 1987)(citing United States v. Harper, 22 M.J. 157, 162 (C.M.A. 1986)).  See also United States v. Pabon, 42 M.J. 404, 406 (C.A.A.F. 1995).

The Supreme Court has stated that "[i]nferences and presumptions are a staple of our adversary system of fact-finding.  It is often necessary for the trier of fact to determine the existence of an element of the crime -- that is, an 'ultimate' or 'elemental' fact -- from the existence of one or more 'evidentiary' or 'basic' facts."  County Court of Ulster County v. Allen, 442 U.S. 140, 156 (1979).  The inferences and presumptions do not necessarily deprive an accused of his due process rights.  Id.  "[I]n criminal cases, the ultimate test of any device's constitutional validity in a given case remains constant: the device must not undermine the factfinder's responsibility at trial, based on evidence adduced by the State, to find the ultimate facts beyond a

10

reasonable doubt."  Id.; see also In re Winship, 397 U.S. 358,
364 (1970).

    Who creates presumptions and inferences.  As Justice Powell
noted, presumptions may be created by legislative bodies or
based on "common sense, and experience. . . ."  Allen, 442 U.S.
at 172 (Powell, J., dissenting).  The President has the
authority to create presumptions and inferences under Article
36, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 836
(2000).  Unless prohibited by controlling law to the contrary,
in matters of procedure, the President has the authority to
place either or both the burden of production and persuasion on
the defense and has done so in appropriate provisions of the
MCM.  As noted, the italicized instructions given in this case
were taken verbatim from the MCM.  Further, those same benchbook
instructions, taken substantially verbatim from the MCM, have
been used in hundreds of cases.

    The courts have uniformly upheld the assignment of the
initial burden to the defense as to duress, necessity, and
mental responsibility.  In fact, as to this latter issue, the
MCM places upon the defense not only the burden to rebut a
presumption of sanity but the requirement to do so by clear and
convincing evidence.[2]  Many special or affirmative defenses

---

[2] Rule for Courts-Martial (R.C.M.) 916(k)(3)(A).

11

entail shifts of burdens and permissible inferences, e.g., entrapment and duress.

All that said, what this case entails is a permissive inference, permitted by the Supreme Court, our case law, the President, and common sense. As to inferences and presumptions, the Supreme Court said:

> The most common evidentiary device is the entirely permissive inference or presumption, which allows -- but does not require -- the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one and which places no burden of any kind on the defendant. In that situation the basic fact may constitute prima facie evidence of the elemental fact. When reviewing this type of device, the Court has required the party challenging it to demonstrate its invalidity as applied to him. Because this permissive presumption leaves the trier of fact free to credit or reject the inference and does not shift the burden of proof, it affects the application of the "beyond a reasonable doubt" standard only if, under the facts of the case, there is no rational way the trier could make the connection permitted by the inference. For only in that situation is there any risk that an explanation of the permissible inference to a jury, or its use by a jury, has caused the presumptively rational factfinder to make an erroneous factual determination.

Allen, 442 U.S. at 157 (internal citations omitted).

Mandatory presumption vs. permissible inference. A mandatory presumption tells the trier of fact that he, she, or they must find the elemental fact upon proof of the basic fact, unless the defendant has come forward with some evidence to rebut the presumed connection between the two facts. Id. The Supreme Court noted a class of quasi-mandatory presumptions

12

"that merely shift the burden of production to the defendant, following the satisfaction of which the ultimate burden of persuasion returns to the prosecution; and presumptions that entirely shift the burden of proof to the defendant." Id. at 160, n.16. The Court stated, "To the extent that a presumption imposes an extremely low burden of production -- e.g., being satisfied by 'any' evidence -- it may well be that its impact is no greater than that of a permissive inference, and it may be proper to analyze it as such." Id.; see also Mullaney v. Wilbur, 421 U.S. 684, 702 n.31 (1975).

In drug cases such as Appellant's, members are allowed to infer wrongful use. This entirely permissive inference allows, but does not require, the trier of fact to infer the elemental fact (wrongfulness) from proof by the evidence of the basic fact (presence of the drug's metabolite in one's system), but places no burden of any kind on the defendant. In other words, even if the defendant were to introduce no evidence whatsoever, the members would be absolutely free to reject the permissive inference, find that the Government had not proved wrongful use, and acquit. Allen, 442 U.S. at 157.

The key issue in this case was a sub-element of wrongfulness, i.e., whether there was knowing use of a controlled substance by Appellant. Unlike the case in which a single use of marijuana is alleged to have occurred when an

accused accidentally ate the wrong brownie at a party, the evidence of knowing, multiple usage by Appellant is overwhelming. Under these circumstances, instructing on the existence of a permissive inference of wrongfulness is nothing more than a reminder to the members that they need not check their common sense at the door to the deliberation room.

Initial allocation. Contrary to Appellant's argument, the military judge was explicit in his instruction that the burden of proving wrongfulness was on the Government, and that even if the defense produced evidence to support an unknowing or otherwise lawful use, the burden of proving wrongfulness, beyond a reasonable doubt, remained with the Government. The burden of proof, with regard to innocence, never shifted to Appellant, nor did the military judge, through his instructions, create a rebuttable presumption of guilt. The instructions explained the element of wrongfulness, that the members could infer wrongfulness, if they chose, and that in determining whether to make that inference, the members should consider evidence that could establish an exception to what might otherwise be a wrongful use. He also instructed the members: "The burden of going forward with evidence with respect to any such exception in any court-martial shall be upon the person claiming its benefit."

United States v. Brewer, No. 04-0567/AF

Fuller.  In arguing that his case is similarly situated to

United States v. Fuller, No. ACM 35058, 2004 CCA LEXIS 182, at

*11-*16, 2004 WL 1539559 at *4-*6 (A.F. Ct. Crim. App. June 23,

2004)(unpublished opinion), Appellant fails to consider all the

instructions given by the military judge in this case,

particularly those on knowledge, innocent ingestion, and

unknowing ingestion.  The military judge appropriately tailored

the standard instructions by including and highlighting the

evidence raised by the defense.  Finally, the military judge

concluded his instructions by once again reminding the members

that the "burden is on the prosecution to establish the guilt of

the accused."

Plain error.  Even if there were error, it was not plain.

There was no objection by the defense in this case.  R.C.M.

920(f).  In fact, during the Article 39(a), UCMJ, session on the

instruction, there was a discussion of these instructions and

neither side commented upon it.  In Johnson v. United States,

the Supreme Court stated:

> [B]efore an appellate court can correct an error not
> raised at trial, there must be (1) "error," (2) that
> is "plain," and (3) that "affects substantial
> rights."  If all three conditions are met, an
> appellate court may then exercise its discretion to
> notice a forfeited error, but only if (4) the error
> "'seriously affects the fairness, integrity, or
> public reputation of judicial proceedings.'"

15

520 U.S. 461, 466-67 (1997)(internal citations omitted); see also United States v. Kho, 54 M.J. 63, 65-66 (C.A.A.F. 2000).

There is no difference between "affect[s] substantial rights" and a "material[] prejudice[] [of] substantial rights" under Article 59(a), UCMJ, 10 U.S.C. § 859(a)(2000). See United States v. Kho, 54 M.J. 63, 66 (C.A.A.F. 2000)(Crawford, C.J., concurring in the result). Even if there were error and it was plain, it did not "affect substantial rights" or "seriously affect the fairness, integrity, or public reputation of the judicial proceedings." Johnson, 520 U.S. at 467. In this case, there was testimony that the Department of Defense cutoff level for confirmation for the marijuana metabolite (THC) in urine is fifteen nanograms per milliliter. Appellant's urinalysis sample, given on August 7, 2000, tested positive for THC in the amount of 97.89 nanograms per milliliter. The testimony added that because the human body metabolizes marijuana rapidly, an individual will usually test positive for THC for only three days after one recreational use. Therefore, the prosecution's theory at trial was that Appellant ingested drugs a few days before his urinalysis.

The prosecution also presented the results of Appellant's hair analysis to support its theory that Appellant had used marijuana on divers occasions during the charged timeframe. The testing involved dividing hair segments taken from Appellant.

16

As each segment represented approximately twelve months of growth, the hair analysis would suggest a rough idea of Appellant's drug use for the twelve months prior to October 5, 2000, the day the hair sample was taken.

THC cannot be found in hair unless the body actually metabolizes marijuana. The metabolite for marijuana in the hair is a strong indicator that the individual used marijuana, as it is virtually impossible for THC to enter the hair if the body has not metabolized the drug. Furthermore, expert testimony established that the person whose hair was tested in this case had ingested THC on multiple occasions in the time period.

Appellant's hair certainly tested positive for marijuana, as did his urine. Appellant did not attack the lab testing procedures, only the interpretation of the results. In the expert's opinion, based on the hair analysis alone, Appellant had used at least thirty recreational doses of marijuana for the twelve months preceding the date the hair sample was provided.

## CONCLUSION

Any rational court-martial panel would have been convinced beyond a reasonable doubt that Appellant knowingly and wrongfully used marijuana, even had all of Appellant's witnesses testified, and without any instruction on the permissive inference. The numbers from the hair testing alone speak for themselves. The defense evidence attempting to establish

possible innocent ingestion and passive inhalation were simply unbelievable. There was also evidence of Appellant's negative reactions during the search process.

The trial counsel did not rely on the allegedly erroneous instructions or even refer to them in his closing argument. Trial counsel summed up the theme of his argument by telling the members:

> Convinced beyond a reasonable doubt. And in this case, it is absolutely there. It is absolutely in front of you. There is no reasonable hypothesis. The one presented by the defense is absolutely not reasonable. There is no other one. We have excluded all reasonable hypotheses to explain his situation.

During closing argument, defense counsel made certain the members understood the correct standard to apply. Defense counsel argued:

> The standard you must apply is whether any reasonable doubt exists as to whether Master Sergeant Brewer knowingly and wrongfully used marijuana. . . .

> You know, someone may feel that, "Well, I think he probably did it," or, "He didn't prove that the urine and hair tests -- he didn't make any positive proof that the urine and hair tests were wrong." Well, that is not the standard. . . .

> Master Sergeant Brewer, according to the Judge's instructions which you are going to hear, doesn't have to prove anything. The burden also rests with the government.

Defense counsel went on to argue, "[w]e don't have to present any alternative theory. The Government has to present the scenario that it must hold true beyond a reasonable doubt."

18

Additionally, once both sides presented their findings arguments, the military judge instructed the members that "the burden of proof to establish the guilt of the accused beyond a reasonable doubt is on the government.  The burden never shifts to the accused to establish his innocence or to disprove the facts necessary to establish each element of the offense."

Under these circumstances, it is clear beyond a reasonable doubt that the instructions at issue were not erroneous and, even if they were, they did not unfairly prejudice Appellant. Irrespective of the instructions, the expert testimony established beyond a reasonable doubt that Appellant used marijuana on multiple occasions.  Even if all of Appellant's evidence had been admitted, the overwhelming strength of the Government's case and the comparative weakness of Appellant's "alibi," "character," or "inference defeating" evidence lead me to conclude, beyond a reasonable doubt, that the trial results would have been the same.  United States v. Kerr, 51 M.J. 401, 405 (C.A.A.F. 1999).

Thus, I respectfully dissent from the majority's expansion of the Military Rules of Evidence under the Due Process Clause, from its failure to consider the instructions of the military judge in the context of the entire case, and from its rejection of the modes of proof promulgated by the President.

BAKER, Judge (dissenting):

I agree with the majority that the testimony of these witnesses was not admissible under Military Rule of Evidence (M.R.E.) 405(b). And, I share the majority's general view that where the Government is allowed a permissive inference of wrongdoing from a drug test, an accused should be allowed some leeway in presenting a defense to counter the inference, especially where the Government is free to charge divers occasions, leaving the accused to defend every minute of every day or every week rather than address a specific act or date. And, in the drug test context, there is something symmetrical (and therefore seemingly fair) about an accused balancing the Government's permissive inference with a permissive inference of his own that permits him to argue that if Witness A did not see drug activity on Tuesday then there must not have been drug activity on Tuesday night.

## The Exclusion of the Four Defense Witnesses

The question in this case, however, is not whether the military judge might have permitted Appellant's "exculpatory witness" testimony on a lenient theory of relevance, but whether the military judge abused his discretion when he did not do so. For the reasons stated below, the military judge did not abuse his discretion when he excluded the testimony of three of the

four witnesses.  With respect to the fourth witness, whose testimony was improperly excluded, the error was harmless.

As recounted in the majority opinion, four military witnesses would have testified on behalf of Appellant that they were with him and observed his behavior for much of the relevant time frame, and that if the accused had used marijuana they would likely have seen some evidence of it.  Three witnesses worked with Appellant, one as his supervisor and two as his co-workers.  They would have testified to their observations of Appellant during the daytime hours of the work week, stating that they had never seen evidence of drug use on the part of the Appellant.  The fourth witness, Appellant's close friend and a former Air Force staff sergeant, working as a civilian at Appellant's duty station at the time, was prepared to testify that he spent significant time with Appellant every weekend and that while he never saw Appellant use drugs or observed him under the influence of drugs, he had observed Appellant's nephew under the influence of marijuana.

According to defense counsel, such witnesses would have helped to "build our wall of proof one brick at a time."  Trial defense counsel argued for the admissibility of these witnesses' statements by claiming, "as long as each brick is part of our wall, it is relevant."  The military judge ultimately granted the Government's motion to exclude this testimony.

United States v. Brewer, No. 04-0567/AF

It is undisputed that an accused has a constitutional right to present relevant evidence to defend against the charges. That right, however, is not absolute. United States v. Browning, 54 M.J. 1, 9 (C.A.A.F. 2000). The burden is on the proponent of the evidence to show admissibility. United States v. Shover, 45 M.J. 119, 122 (C.A.A.F. 1996). "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." M.R.E. 401. Relevant evidence may be excluded, if "its probative value is substantially outweighed by the danger of unfair prejudice . . . ." M.R.E. 403. If the military judge weighs the evidence and excludes it, "'appellant has the burden of going forward with conclusive argument that the judge abused his discretion.'" Shover, 45 M.J. at 122 (quoting United States v. Mukes, 18 M.J. 358, 359 (C.M.A. 1984)). We will not reverse the military judge's decision unless appellant persuades us that there was a "'clear abuse of discretion.'" Browning, 54 M.J. 1, 9 (C.A.A.F. 2000)(quoting United States v. Johnson, 46 M.J. 8, 10 (C.A.A.F. 1997)).

The problem with Appellant's theory of admissibility is that three of the four witness statements were not relevant to the issue of Appellant's innocent ingestion of drugs.

Appellant did not contest that he had ingested drugs. The Government offered the results of a urinalysis and hair spectrum analysis on this point, and the results were undisputed. Appellant did not take the stand himself, but he did defend on the grounds that he had innocently ingested the drugs, and that the innocent ingestion was more than likely the result of his exposure to his nephew's and his nephew's friend's illegal conduct in his house while Appellant was off-duty. In the words of his civilian defense counsel:

> In September of 2000, Master Sergeant Brewer learned that his random urine sample had tested positive . . . .
>
> . . . .
>
> Master Sergeant Brewer, when learning of his sample, sat in the OSI office stunned, trying to figure out why did this come back positive? "Why was my sample positive for marijuana?"
>
> Fortunately, in the intervening months, <u>Master Sergeant Brewer has been able to find out what likely caused his sample to come back positive</u>.
>
> Now, following the chronology of this, when Master Sergeant Brewer came home that day, he spoke to his 20 year old nephew, Antron Harris -- he is called Tron for short -- about what had happened. And the next day, Tron suddenly moves out of that house. But Master Sergeant Brewer, at that time, didn't connect the events at all.
>
> . . . .
>
> Over the next six or eight months, he spends a lot of time trying to figure out the answer to this question. He is discussing it with various people, researching it, and during one discussion, one

4

unlikely discussion, he learns that Black 'n Milds, Black 'n Milds cigars, the kids will frequently unroll the tobacco from Black 'n Mild cigars and Philly blunt cigars, cheap cigars that you can get at the 7-11, and fill them back up with marijuana so the cigar tobacco and the marijuana tobacco are together in the cigar and smoke that as a way of delivering marijuana to the body.

And he recalls -- this is when it starts to click -- that Tron, his nephew, smoked Black 'n Mild cigars. He is unable to get a hold of Tron. He also starts thinking about one of the kids, Tron's friend, who frequently was at the house that summer with Tron, basically his only friend in the area, a kid named D.J.  And that kid was – kind of patterned his style, so to speak, after a rapper called -- a rap star called Eminem. . . .

But in connecting this and starting to think about this, he is thinking about, "Did Tron and D.J. bring marijuana into my house?"  And he can't get a hold of Tron . . . . But he remembers where D.J. works.  He goes to D.J.'s work and he confronts him. Bingo.

. . . .

Not only did they smoke marijuana, but they ate marijuana.  D.J. specifically recalls on one occasion, they put marijuana in some spaghetti sauce and ate it to get high.  And that was at the house -- Master Sergeant Brewer's house.

The sauce was kept in Master Sergeant Brewer's refrigerator like any other food, and it's probable that by eating this sauce that Tron had spiked with marijuana, Master Sergeant Brewer tested positive for marijuana.

. . . .

There is no dispute about the science in this case. . . .

The reason we agree with the scientific expert -- substantially agree -- is that the conclusions that he

reaches, the science in this case, the hair and urine testing, are not inconsistent with the scenario I described above.  If Master Sergeant Brewer had unknowingly ingested marijuana by eating spaghetti sauce during the summer containing a drug, it's not likely that he would have felt intoxicated.

But he likely would have tested positive on the urinalysis within a reasonable time after that. Moreover, if he ate it more than once, and many people will eat spaghetti as leftovers et cetera, it is also not inconsistent that his hair would test positive, his pubic hair, two months later, even twelve months later.

Emphasis added.

Subsequently, Appellant offered, and the military judge permitted, the testimony of his nephew's friend, who admitted to smoking marijuana in the house and making food laced with the drug.  However, three of the four excluded witnesses could only testify to Appellant's conduct at work during duty hours.  They were not competent to testify to Appellant's nephew's conduct or Appellant's appearance or activities while outside the workplace.  Therefore, it is not evident as to which fact of consequence their proffered testimony would have addressed.

Specifically, it is not evident how their testimony would have made it more or less probable that Appellant's acknowledged drug ingestion at home, the place where he claimed the ingestion had occurred, was innocent or wrongful.  These witnesses did not see it.  These witnesses did not speak about it with Appellant. And the proffer made no suggestion that these witnesses were

competent to testify regarding the conditions, practices, or behaviors in Appellant's house.

With respect to the fourth excluded witness who intended to testify about Appellant's off-duty activities and the suspected drug use of Appellant's nephew, his testimony was improperly excluded. He would have provided evidence relevant to Appellant's claim of innocently ingesting marijuana that had been brought into the house by his nephew. However, unlike the majority, I cannot determine that this error was a constitutional violation of Appellant's due process right to defend against the charges against him.

The right to offer the testimony of witnesses is in plain terms the right to present a defense and the right to present the defendant's version of the facts. Washington v. Texas, 388 U.S. 14, 18 (1967). Just as an accused has the right to confront the prosecution's witnesses and challenge their testimony, he has the right to present his own witnesses to establish his defense. Id. at 19. This right, rooted in the Sixth Amendment, is a fundamental element of due process.

In this case, the Appellant was able to present his defense of innocent ingestion. Though the Appellant never took the stand, his fiancée and a friend of his nephew both testified on his behalf, each asserting that they had never witnessed the Appellant using drugs. Additionally, the nephew's friend

testified at length about marijuana that was smoked in Appellant's basement and food that was prepared at Appellant's house that contained marijuana and possibly served to Appellant without his knowledge. While the excluded testimony of the fourth witness might have bolstered that defense, the omission did not deprive Appellant of his right to present it.

When examining an error that is nonconstitutional in nature, we seek to determine whether the error was harmless, not whether it was harmless beyond a reasonable doubt. United States v. Pollard, 38 M.J. 41, 51-52 (C.M.A. 1993). The test for nonconstitutional error is whether the error had a substantial influence on the findings. Kotteakos v. United States, 328 U.S. 750, 765 (1946). Thus, if we conclude that the error substantially influenced the findings, or if we are "left in grave doubt" whether the findings were so influenced, we must reverse. Id. In light of the evidence presented by the Government to rebut Appellant's theory of innocent ingestion, we can conclude that the exclusion of this witness' testimony did not substantially influence the guilty findings.

To counter the Appellant's argument that he had ingested marijuana unknowingly by passively inhaling the smoke caused by his nephew's drug use in the basement, the Government presented extensive testimony from Dr. Carl Selavka. Dr. Selavka, the Director of the Massachusetts State Police Crime Laboratory and

a forensic chemist and toxicologist, testified at length about passive inhalation studies that had been performed with known subjects who did not have prior marijuana in their systems. These studies sought to determine the likelihood of passive inhalation giving rise to positive findings in blood and urine samples. Dr. Selavka stated that such studies demonstrated that the less smoke is ingested and inhaled, the less metabolite will be detected in an individual's biological tissues. Specifically, he detailed a study in which individuals were exposed to the second hand smoke from four marijuana cigarettes in a very small, closed environment for one hour at a time every day for six days. The individuals, according to the study, did not test positive for the Department of Defense cutoff after such exposure.

Likewise, Dr. Selavka testified, when asked about the likelihood of the Appellant testing positive for marijuana use after ingesting pasta sauce laced with the drug: "In the absence of other ingestions, there is just not enough ingestion of the THC over the time period represented by the hair to logically give rise to the positive finding from the spaghetti sauce scenario itself." This testimony would have led the members to question Appellant's theory by bringing to their attention that there were studies that demonstrated that his explanations for his positive drug tests simply were not

9

plausible.  Further, it is unlikely that any testimony from the excluded witness about the nephew's drug use in the house would have negated Dr. Selavka's testimony or persuaded the members that Appellant's possible exposure to the drug was somehow distinguishable from the exposure of the individuals who participated in the study.

Additionally, the excluded testimony of the fourth witness would have directly contradicted evidence presented by the Appellant's fiancée on the issue of drug use in their home. Specifically, she testified that she and the Appellant would not allow drugs to be used in their home.  When questioned about whether she knew that Appellant's nephew and his friend may have been using drugs in the basement, she responded:  "I was never aware of it, but we were very strict about -- we didn't allow anything like that in our house.  But I never knew of it.  He never did it in front of me."  She further stated that in the two years she lived in the home with Appellant, she never smelled anything or saw anything that would have lead her to believe that any marijuana use was occurring in their home, specifically in the basement.

The fourth witness would have testified that he noticed the smell of marijuana on Appellant's nephew and his friend and that he observed them under the influence of the drug in the home. "I saw there [sic] eyes were red or squinting which I observed

10

in others who were high on marijuana." He also would have testified that he observed them in possession of drug paraphernalia. "I saw that they had Black and Mild cigars which are commonly used by young people to smoke marijuana." If this witness had been found credible by the members, it is likely that his observations about the nephew's drug use in the house would have undercut Appellant's fiancée's claim that they were very strict about marijuana not being allowed in the house and that there were no signs of it ever being present in the house, thus weakening his defense.

For these reasons, I do not believe the military judge abused his discretion with respect to three of the witnesses and with respect to the fourth, who was erroneously excluded, I believe that error was harmless. Accordingly, I respectfully dissent on Issue II.

## The Military Judge's Instruction

I also respectfully dissent from the majority's conclusion on Issue III. To be sure, the instruction at issue is no model of clarity. It is confusing, even to lawyers -- or particularly to lawyers -- who can dissect the text and legitimately parse alternative meaning from almost every word and phrase. For example, when read in isolation from the remainder of the instructions, the military judge's statement, "If such an issue [an exception to wrongful use] is raised by the evidence

presented, <u>then</u> the burden is on the United States to establish that the use was wrongful" is problematic. Emphasis added. Of course, the burden of proof is always on the United States to establish that use was wrongful, but the use of the word "then" suggests this might not always be the case.

However, the question in this case is whether there was plain and obvious instructional error. This is not a case where the defense counsel objected and proposed alternative language. Nor is this case resolved by asking whether the instruction could be improved. That is plain and obvious. Among other things, plain English would improve the instruction. If confusion alone was the standard for plain error, then plain instructional error would occur with cascading regularity.

Based on the totality of the instructions provided by the military judge in the specific context of this case, I do not believe there was plain error. The one part of the military judge's instructions that was unequivocally clear, and repetitive, was the part concerning his instructions that the Government never relinquished its burden to prove all the elements beyond a reasonable doubt. Thus, at the outset of his instructions the military judge stated: "The burden is on the prosecution to establish the guilt of the accused." And at the close of his instructions the military judge stated:

12

> You are further advised, first, that the accused is presumed to be innocent until his guilt is established by legal and competent evidence beyond a reasonable doubt . . . . And lastly, the burden of proof to establish the guilt of the accused beyond a reasonable doubt is on the government.  The burden never shifts to the accused to establish innocence or to disprove the facts necessary to establish each element of the offense.

These instructions were not confusing, nor did they address obscure points of law.  Further, these instructions bracketing the military judge's instructional packet echoed the ingrained and basic understanding members would already have regarding the Government's burden of proof.  As a result, I do not think it is plain or obvious that the confusing language cited above and in the lead opinion would cause reasonable members to otherwise think the burden of proof was on the Appellant rather than the Government.

Based on the foregoing, I would affirm the decision of the United States Air Force Court of Criminal Appeals.